FRANK F. AND JUDITH J. FOIL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 39599-84.　　　Filed February 22, 1989.

*Theodore L. Jones, Katherine W. King,* and *Bryan J. Prendergast,* for the petitioners.
*Stevens E. Moore,* for the respondent.

CHABOT, *Judge:* Respondent determined a deficiency in Federal individual income tax against petitioners for 1981 in the amount of $3,046.64. The issues for decision are as follows:

(1) Whether the relevant plan is the "Judicial Plan" (established under Louisiana Revised Statutes 13:11-26) or the "System's Plan" (established under La.R.S. 13:11-26 (West Supp. 1987), 24:36, 42:541-719, and 56:681-692);

(2) Whether the Judicial Plan is a "qualified State judicial plan" as defined by section 131(c)(3) of the Revenue Act of 1978, 92 Stat. 2782 (hereinafter sometimes referred to as R.A. 1978) as added by section 252 of the Tax Equity and Fiscal Responsibility Act of 1982 enacted by 96 Stat. 324 (hereinafter sometimes referred to as TEFRA), and, if so, what are the consequences of that status;

(3) Alternatively, whether the Judicial Plan is an "eligible State deferred compensation plan" within the meaning of section 457;[1]

(4) Alternatively, whether contributions that petitioner-husband made under the Judicial Plan in 1981 are excludable from gross income under section 414(h)(2).

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioners Frank F. Foil (hereinafter sometimes referred to as Foil) and Judith J. Foil, husband and wife, resided in Baton Rouge, Louisiana.

Foil was elected as a judge in and for the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on May 3, 1976. He held that office through 1981 and beyond.

Louisiana has, by statute, created various public retirement systems for certain employees of that State, including the following systems: Louisiana State Employees' Retirement System (hereinafter sometimes referred to as LASER & Co.); State Police Pension and Relief Fund; Louisiana School Employees' Retirement System; Teachers' Retirement System of Louisiana; Assessors' Retirement Fund; Clerks of Court Retirement and Relief Fund; District Attorneys' Retirement System; Municipal Employees' Retirement System of Louisiana; Parochial Employees' Retirement System of Louisiana; Registrar of Voters Employees' Retirement System; Sheriffs' Pension and Relief Fund; Municipal Police

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.

Employees' Retirement System; and Firefighters Retirement System. La.R.S. 42:698.2.

## The Louisiana State Employees' Retirement System

In 1946, Louisiana enacted La.R.S. 42:541 et seq. As enacted in 1946, substantially revised in 1972, and in effect for 1981, these provisions established LASER & Co., the management of a board of trustees (hereinafter sometimes referred to as the board), in order to provide retirement allowances and other benefits for certain State officers and employees and their beneficiaries.[2] La.R.S. 42:541-720.21. LASER & Co. is a State agency which, through the board, performs the following two primary functions: (1) It administers the trust into which member contributions are placed;

---

[2]As of 1981, La.R.S. 42:551 and 553 provided for membership in LASER & Co. as follows:

Sec. 551. Eligibility for membership

The membership of this system shall be composed as follows:

(1) Each person who becomes an employee in the state service, except those specifically excluded or as to whom an option or election is provided in this Section, shall become a member of the system as a condition of employment.

(2) Any person who becomes an employee in the state service who is a contributing member in any other retirement system shall become a member of this system unless he elects at the time of his employment to remain a contributing member of such other system for which he remains eligible for membership.

(3) Employees on educational leave with stipend.

(4) Membership shall be optional for elected officials and officials appointed by the governor.

(5) State, municipal, or parochial employees transferred under the provisions of this Chapter, with the approval of the board of trustees, shall become members of the system.

Sec. 553. Classes of employees not eligible

The following classes of employees and officers shall not be or become members of this system:

(1) Elected or appointed officials or employees of this state who are contributing members of any other state retirement system, or any retirement system covering employees of any political subdivisions of the state, unless by transfer in accordance with the provisions of the optional reciprocal transfer agreement provided for by this Chapter.

(2) Public officials and state employees who receive a per diem allowance in lieu of earned compensation.

(3) Persons employed prior to January 1, 1973, on a part-time, intermittent, temporary, emergency or job appointment basis who elect not to become members prior to June 30, 1973.

(4) Patient or inmate help in state charitable, penal or correctional institutions.

(5) Students, interns, and resident physicians at any state educational institutions who are employed by any agency of the state for temporary, part-time, or intermittent work, except those on educational leave.

(6) Independent contractors pursuing an independent business or profession pursuant to a contract for a specific price to perform a specific task.

(7) Employees who are fifty-five years of age or over at the time of employment.

(8) Retirees of this system, who are under the age of fifty-five, who return to state employment within the same benefit class of the system.

(9) Judges and court officers in office on October 2, 1976, who did not timely exercise their option to become members.

[La.R.S. Ann. 42:551, 553 (West Supp. 1987)]

and (2) it administers the implementation of La.R.S. 13:11-26, 24:36, 42:541-719, and 56:681-692. The trust administered by LASER & Co. (hereinafter sometimes referred to as the Title 42 Trust) was created by La.R.S. 42:541 et seq. The Title 42 Trust holds all contributions made to LASER & Co. (whether made under the Judicial Plan or under the System's Plan) and is exempt from Federal income taxation under section 501(a).

La.R.S. 42:571 provides that a member (in effect, a plan participant; see La.R.S. 42:543(17), 551, and 553) who has at least 30 years of service is eligible to retire at any age; who has at least 25 years of service is eligible to retire at age 55 or thereafter; or who has at least 10 years of service is eligible to retire at age 60 or thereafter. La.R.S. 42:571A.[3] The statute also provides that a member who retires on or after July 1, 1973, is to receive a maximum retirement annuity equal to 2½ percent of average compensation for each year of service, plus $300. La.R.S. 42:575. The statute also provides for disability benefits (La.R.S. 42:702M, 581B(1)) and survivors' benefits (La.R.S. 42:601 et seq.).

Each participant is required to contribute (by way of withholding) 7 percent of his or her "earned compensation"[4] (hereinafter sometimes referred to as employee contributions) each payroll period. La.R.S. 42:651A(1)(c). Each State agency with participants (hereinafter sometimes referred to as employing agency) is required to contribute an additional 9 percent of the earned compensation of its participants (hereinafter sometimes referred to as the employer contribution). La.R.S. 42:651A(3). Each month the employing agency is to pay to the board the total amount of employee contributions withheld from the payroll of all its participants, together with its required employer contribution. La.R.S. 42:651B.

When the employee contributions are received by the board, La.R.S. 42:652 requires that they be credited to the Employees' Savings Account. La.R.S. 42:653 requires that

---

[3]However, special age or service requirements are provided in the retirement system for certain members in enumerated employment classifications, such as correctional officers and security personnel, and probation and parole officers. La.R.S. 42:571D, E.

[4]Employees in certain enumerated job classifications, such as certain correctional officers, probation and parole officers, security employees, and wildlife enforcement agents, are required to contribute a higher percentage of their earned compensation. La.R.S. 42:651A(2).

the employer contributions be credited to the Employer's Accumulation Account. When the member retires, his or her accumulated contributions are to be credited to the Retiree's Annuity Reserve pursuant to La.R.S. 42:654. The procedures established by La.R.S. 42:652, 653, and 654 are accounting functions; all employer contributions and employee contributions are commingled in the Title 42 Trust and are either invested or are used to cover benefit costs, administrative expenses, and other investment-related expenses. For example, the Title 42 Trust's funds, including earnings thereon, have been used to pay the Title 42 Trust's custodian fees and a $4 million settlement of a lawsuit alleging breach of a standby commitment by LASER & Co. to finance a building project as an investment by the Title 42 Trust.

Under certain circumstances, the Title 42 Trust has received general fund money from the State Treasury to supplement the employee and employer contributions. For example, moneys were received when the Retirement Plan for Judges and Officers of the Court provisions were enacted (discussed *infra*), and when a number of employees of Louisiana State University were brought under LASER & Co. In those circumstances, the State legislature had enacted legislation which placed a new and large liability on LASER & Co. Whereupon, the State legislature also enacted special funding provisions, with the funds to come from the general fund, to enable LASER & Co. to deal with the added liabilities.

La.R.S. 42:657 provides that any member who leaves all State employment may, after 60 days, obtain a refund of all of his or her "accumulated contributions".

On November 8, 1967, respondent "determined that the Louisiana State Employees' Retirement System, a pension plan for certain employees and officials of the State of Louisiana, meets the requirements of section 401(a)(3), (4), (5), (6), (7), and (8) of the Internal Revenue Code for qualified plans." In 1967, the plan that was referred to included provisions provided by La.R.S. 42:541 et seq., but did not include provisions provided by La.R.S. 13:11-26 (discussed *infra*).

During 1981, the board administered a plan which was tax-qualified under section 401(a) and which included a trust which was exempt from tax under section 501(a).

In a letter dated June 27, 1983, respondent advised LASER & Co. that he had made a favorable determination on LASER & Co.'s request for a determination that the plan that was referred to, as amended, was a qualified plan under section 401(a). This letter further advised LASER & Co. that continued qualification of the plan would depend on its effect in operation under its present form. The letter also stated that the determination was subject to the adoption of certain proposed amendments. Louisiana then amended La.R.S. title 42 to incorporate these proposed amendments.

### The Retirement Plan for Judges and Court Officers

When Foil took office, article 7, section 8, of the Louisiana Constitution of 1921 governed the retirement of Louisiana State court judges. Under the Louisiana Constitution, State court judges received a percentage of their current salary as retirement pay based on the number of years of their service and their age at retirement. No contributions were made by the judges, and benefits were paid through annual appropriations out of the State's general fund.

Under the provisions of this program, a judge who had served for many years on the bench might receive no retirement benefits because he or she was not reelected. Also, as judges' salaries increased and as more judges retired, the annual appropriation for the judges' retirement benefits was rapidly increasing. The judges began to have problems getting pay raises approved by the legislature, because of the effect the raises in salary would have by further increasing the annual pension appropriations. Consequently, various individuals and organizations became interested in providing a different retirement system for the State's judges. At the Louisiana Constitutional Convention in 1973, an effort was made to write new provisions dealing with judicial retirement into the new Louisiana Constitution.

As a result of these efforts, the Louisiana Constitution of 1974, which became effective on January 1, 1975, directed

the Legislature to establish a new retirement system for judges, that would apply to new judges and would be elective for judges already in office on the effective date of the new retirement system.[5]

Under the mandate of this constitutional provision, the Louisiana legislature enacted Act No. 518 of 1976, which added La.R.S. 13:11 et seq.[6]

---

[5]Article V, section 23, of the Louisiana Constitution of 1974 provides as follows:

Sec. 23. Judges; Retirement

Section 23. (A) Retirement System. Within two years after the effective date of this constitution, the legislature shall provide for a retirement system for judges which shall apply to a judge taking office after the effective date of the law enacting the system and in which a judge in office at that time may elect to become a member, with credit for all prior years of judicial service and without contribution therefor. The retirement benefits and judicial service rights of a judge in office or retired on the effective date of this constitution shall not be diminished, nor shall the benefits to which a surviving spouse is entitled be reduced.

(B) Mandatory Retirement. Except as otherwise provided in this Section, a judge shall not remain in office beyond his seventieth birthday.

[6]La.R.S. 13:11 et seq. provides, in pertinent part, as follows:

PART II. RETIREMENT PLAN FOR JUDGES AND OFFICERS OF THE COURT

Sec. 13:11. Membership in the Louisiana State Employees' Retirement System

Anything in R.S. 42:553 [see n.2, supra] to the contrary notwithstanding, the judges and court officers set forth in Section 13 of this Part shall be eligible to become members of the Louisiana State Employees' Retirement System and obtain credit in and transfer credit to said system, as set forth herein, if the option hereinafter granted is exercised within the time hereinafter set forth.

Sec. 13:12. Effect of failure to exercise option to become member of Louisiana State Employees' Retirement System

A. Any judge or court officer enumerated in R. S. 13:13 who is in office on the effective date of this Part and who does not avail himself of the provisions of this Part by timely exercising the option hereinafter provided, and their surviving spouses, shall retain the right to receive those benefits provided for judges and their surviving spouses in accordance with the constitution and the statutes of this state or by local laws pertaining to the respective political subdivisions of the state heretofore provided.

B. No judge or court officer described in R.S. 13:13 who takes office after the effective date of this Part who does not avail himself of the provisions hereof by timely exercising the option hereinafter provided, shall be eligible thereafter to receive any retirement or pension benefits from the state of Louisiana pursuant to or provided by the authority of Section 16 of Article XIV of the Louisiana Constitution of 1974.

Sec. 13:13. Eligible judges and court officers

This Part shall apply to all present and future judges and court officers hereinafter enumerated:

(1) Justices of the Louisiana Supreme Court.

(2) The judicial administrator of the supreme court and his deputy or deputies.

(3) Judges of the courts of appeal.

(4) Judges of the district courts.

(5) Judges of the Civil District Court for the Parish of Orleans.

(6) Commissioners of the Civil District Court for the Parish of Orleans.

(7) Judges of the Criminal District Court for the Parish of Orleans.

(8) Magistrates of the magistrate section of the Criminal District Court for the Parish of Orleans.

(9) Commissioners of the magistrate section of the Criminal District Court for the Parish of Orleans.

(10) Judges of the juvenile courts for the parishes of Orleans, Jefferson, and Caddo.

All but one of the eligible judges and court officers who have taken office after the effective date of La.R.S. 13:11-26, have exercised their options under La.R.S. 13:14. As of 1985, 38 judges who had been on the bench on the

(11) Judges of the family court for the parish of East Baton Rouge.

(12) Judges of the first and second parish courts for the parish of Jefferson.

(13) Judges of the first and second city courts of New Orleans, Municipal Court of New Orleans and traffic courts of New Orleans.

(14) Judges of the various city courts now existing or hereafter created in this state.

(15) Judges of any parish court now existing or hereafter created in this state.

Sec. 13:14. Exercise of option

A. Each judge and court officer described in R.S. 13:13 who is in office on the effective date of this Part is hereby granted the option to become a member of the Louisiana State Employees' Retirement System for a period of one hundred twenty days from said date by electing to avail himself within said time of all the benefits, emoluments, and conditions of said system as presently provided by R.S. 42:541 through R.S. 42:699, and of all benefits, emoluments, and conditions otherwise applicable to said system by the statutory laws of Louisiana, including the provisions of this Part.

B. For a period of one hundred twenty days after taking the oath of office, each of such judges and court officers who assume such offices after the effective date of this Part shall have the same option as herein provided for those in office on said date. Credit for service rendered prior to the exercise of said option shall be governed by the provisions of R.S. 13:21A.

C. The option granted herein shall be exercised by addressing a letter to the board of trustees of the Louisiana State Employees' Retirement System advising said board that the judge or court officer exercising the option accepts membership in the system in accordance with the provisions of this Part.

\*       \*       \*       \*       \*       \*       \*

Sec. 13:15. Additional benefits

Any person covered by this Part who elects to become a member of the Louisiana State Employees' Retirement System shall receive an additional benefit equal to one percent times the number of years of service as a judge or court officer times his average compensation.

Sec. 13:16. Eligibility for retirement

Eligibility for retirement under this Part shall be as follows:

A. (1) Any person covered by this Part who elects to become a member of the Louisiana State Employees' Retirement System and who prior to application for service retirement has accumulated a total of at least eighteen years of creditable service as a judge or court officer shall be entitled to retire without regard to the age he has attained at the time he makes application for retirement.

(2) Upon attaining a total of twenty years of creditable service, at least twelve years of which were as a judge or court officer, any such person shall be entitled to retire if he has attained the age of fifty years.

(3) Upon attaining a total of at least twelve years of creditable service as a judge or court officer, any such person shall be entitled to retire when he attains the age of fifty-five years.

(4) Upon attaining the age of seventy years any such person shall be entitled to retire hereunder without regard to the number of years of creditable service as a judge or court officer.

B. Any person who retires under the provisions of Subsection A hereof shall receive the full retirement benefit, without reduction of any percentage which may be provided in the laws pertaining to the retirement system for retirement before the normal retirement age, if such person has not previously received a refund of his accumulated contributions.

C. The retirement benefits provided by this Part shall not annually exceed one hundred percent of average compensation, and when a member has earned benefits equal to one hundred percent of his average compensation, no further contributions shall be required of him. However, the state, its agencies and political subdivisions shall continue to pay to the system the employer's contribution.

effective date of La.R.S. 13:11-26, did not exercise their options to join the new retirement system but remained under the old retirement system. La.R.S. 13:11 was amended in 1983 to provide that judges and court officers described in La.R.S. 13:13 who take office on and after July 1, 1983, are required to become members of the retirement system under La.R.S. 13:11 et seq.

Foil exercised his option to come under the new retirement system within the 120 days after October 1, 1976, the

---

D. For purposes of computing retirement benefits for persons covered by this Part, "average compensation" means the average annual earned compensation of the member for any three years of creditable service during which such earned compensation was the highest.

    \*      \*      \*      \*      \*      \*      \*

Sec. 13:18. Contributions

In addition to the regular employee contribution required by law to be paid into the Louisiana State Employees' Retirement System by its members, each person covered by this Part who elects to become a member of that system thereafter shall contribute to said system an amount equal to four percent of all salary or compensation received by him for service as a judge or as a court officer, regardless of the source of such salary or compensation. The state of Louisiana and any political subdivision or agency thereof that pays, contributes to or supplements the salary or compensation of each such person, through the office of its treasurer or other appropriate official or authority, thereafter shall contribute to the system an amount equal to nine percent of the salary or compensation paid to each person electing to become a member of this system in accordance with the provisions of this Part.

    \*      \*      \*      \*      \*      \*      \*

Sec. 13:23. Existing members of system

Any person covered by this Part who on the effective date hereof is a member of the Louisiana State Employees' Retirement System shall have the option to avail himself of the provisions of this Part as though he were not such a member.

Sec. 13:24. Rights of persons covered under this Part

Any person covered by this Part who elects to become a member of the Louisiana State Employees' Retirement System shall be immediately vested with all the benefits, emoluments, and conditions of the system and also with the additional benefits provided by this Part.

Sec. 13:25. Payment of benefits, source

Benefits payable pursuant to this Part shall be paid by:

A. The Louisiana State Employees' Retirement System, with respect to any judge or court officer described in R.S. 13:13 who assumes office as such after the effective date of this Part.

B. The Louisiana State Employees' Retirement System and the state of Louisiana and any political subdivision or agency thereof that pays, contributes to or supplements the salary of a judge or court officer described in R.S. 13:13, with respect to any such judge or court officer who was in office on the effective date of this Part; the Louisiana State Employees' Retirement System to pay a benefit of equal value to the accumulated contributions, annuity or benefits and regular interest, as the case may be, when computed on the basis of such mortality table as shall be regularly adopted by the Board of Trustees of the said Louisiana State Employees' Retirement System; and, the state of Louisiana and any political subdivision or agency thereof that pays, contributes to or supplements the salary of such judge or court officer to pay the remainder of the total benefits due in the proportion that the salaries paid by each bear to his average compensation as defined herein.

    \*      \*      \*      \*      \*      \*      \*

Sec. 13:26. Applicability of laws governing Louisiana State Employees' Retirement System

Except as otherwise provided in this Part the provisions of Chapter 10 of Title 42 of the Louisiana Revised Statutes of 1950 shall be applicable to persons covered by this Part.

effective date of the enactment of La.R.S. 13:11 et seq. (see La.R.S. 13:14A, *supra*), and he has remained a member since that time.

In 1981, contributions to LASER & Co. were made by and for judges covered by La.R.S. 13:11 et seq. as shown in table 1.

TABLE 1

| Source | Percent of earned compensation |
|---|---|
| Employee contributions: | |
| Required by R.S. 42:651A(1)(c).............. | 7 |
| Required by R.S. 13:18....................... | 4 |
| Total employee contributions................. | 11 |
| Employer contribution required by R.S. | |
| 42:651A(3) and 13:18........................ | 9 |
| Total contributions .......................... | 20 |

As a result of La.R.S. 13:15 and 42:575, a judge who retires is to receive a maximum retirement annuity equal to 3½ percent of average compensation for each year of service, plus $300.

Foil's income as a district judge in 1981 was $57,197.60; for that year, he made employee contributions to LASER & Co. in the amount of $6,291.72 (hereinafter sometimes referred to as the 1981 employee contributions). Foil's 1981 employee contributions were made each month by the withholding of 11 percent of his monthly salary. His 1981 employee contributions, together with the withheld 11-percent contributions of all the other judges and officers of the Judiciary Department who were members of LASER & Co., and together with the 9-percent employer contributions of the Judiciary Department were paid to LASER & Co. each month by a check drawn on the Judiciary Department's account and made payable to LASER & Co. These amounts then were held in the Title 42 Trust.

All the funds, both employer and employee contributions, are commingled in the Title 42 Trust and either are invested or are used to cover administrative and benefit costs.

In addition to judges and court officers (La.R.S. 13:11 et seq.), Louisiana law provided special retirement provisions for certain other participating employees, including enforcement agents employed by the Louisiana Wildlife and

Fisheries Commission (La.R.S. 56:681 et seq.) and Louisiana State legislators, the governor, the lieutenant governor, the State treasurer, the secretary of the Senate, and the clerk of the House (La.R.S. 24:25). Louisiana law also provided special retirement provisions in La.R.S. title 42 for certain correctional and security officers, and probation and parole officers. La.R.S. 42:571D and E. See notes 3 and 4, *supra.*

The salaries of Louisiana State judges are established by State statute. In 1981, Justices on the Supreme Court of Louisiana had the highest salary of all judges in the State. The salary of Louisiana Supreme Court Justices, on an annual basis, was $61,635 from January 1, 1981, through August 31, 1981, and $66,566 from September 1, 1981, through December 31, 1981. Foil's salary, on an annual basis, was $55,712 from January 1, 1981, through August 31, 1981, and $60,169 from September 1, 1981, through December 31, 1981. The statutory employee contribution for 1981 required of the highest paid Louisiana State judges was $6,960.65 ($(2/3 \times 11\% \times \$61,635) + (1/3 \times 11\% \times \$66,566)$).

Neither title 13 nor title 42 of La.R.S. specifically states that, except for the catch-up provisions, "the maximum that may be deferred under the plan for the taxable year shall not exceed the lesser of $7,500.00 or $33\frac{1}{3}$ percent of the participant's includible compensation." Neither title 13 nor title 42 of La.R.S. specifically states that "all amounts of compensation deferred under the plan, all property and rights purchased with such amounts, and all income attributable to such amounts, property or rights, shall remain (until made available to the participant or other beneficiary) solely the property and rights of the State (without being restricted to the provision of benefits under the plan) subject only to the claims of the State's general creditors."

LASER & Co. has not requested or received a ruling, determination, or any other notice that the provisions of title 13 or title 42 of La.R.S. met the requirements of an "eligible State deferred compensation plan" in 1981, or at any other time. LASER & Co. has not received any ruling, determination, or other notice that the provisions of title 13 or title 42 of La.R.S. were being administered in 1981 or at

any other time, in a manner inconsistent with section 457(b).

All assets of LASER & Co. are available to pay benefits for all members, including members in the special categories. In particular, there is no segregation of assets as between those relating to benefits for members described in La.R.S. title 13 and members not described in La.R.S. title 13.

LASER & Co. filed only one application with the Internal Revenue Service to request a determination that LASER & Co. was a qualified plan under section 401(a). (I.e., LASER & Co. has filed only for the System's Plan.) LASER & Co. filed only one request with the Internal Revenue Service for a ruling that former employee contributions made to LASER & Co. and "picked up" by the employer as employer contributions qualify as employer contributions under section 414(h) for any of the taxable years ending June 30, 1983, and following. LASER & Co. filed only one annual information return with the Internal Revenue Service (Form 5500-G, Annual Return/Report of Employer Benefit Plan) for each of the plan years ending June 30, 1980, and June 30, 1981. On each of these information returns, "Louisiana State Employees' Retirement System" is shown as the plan sponsor, the plan administrator, and also the name of the plan. The fiscal year 1980 information return states as follows: "Have over 790,000,000 in trust funds, and payment of all benefits earned are contractual obligations of the State of Louisiana as provided in the state constitution." The fiscal year 1981 tax return states the same, except for $900,000,000 in place of $790,000,000.

## The "Pick-up" Provisions

In 1982, the Louisiana Legislature enacted Act No. 843, effective August 4, 1982, which added section 697.12 to title 42,[7] of La.R.S. in order to allow certain public retirement systems and pension funds to "pick up" employee contribu-

---

[7]La.R.S. 42:697.12 provides as follows:

Sec. 697.12. Tax sheltering of employee contributions to retirement

A. The provisions of this Section shall be applicable to the following public retirement systems and pension funds: Louisiana State Employees' Retirement System, State Police Pension and Relief Fund, Louisiana School Employees' Retirement System, Louisiana School Lunch Employees' Retirement System, Louisiana Teachers' Retirement System, Assessors' Retirement Fund, Clerks' of Court Retirement and Relief Fund, District Attorneys' Retirement System, Municipal Employees' Retirement System of Louisiana, Parochial Employees'

tions to the applicable system or fund (hereinafter some-times referred to as the pick-up provisions).

The board did not decide to pick up employee contributions for any time before January 1, 1984. The board adopted the following resolution at a meeting held on August 10, 1983:

BE IT RESOLVED, the following plan was adopted on motion of Mrs. McManus, seconded by Mr. Landry:

(1) All contributing employers of the System shall be notified that effective January 1, 1984, those portions of employees' salaries which are designated as employee contributions shall be paid directly to the System by the employer and that employees shall not have the option of not having such contributions made by their respective employers.

(2) All contributing employers of the System shall be further notified that, effective January 1, 1984, employees' salaries shall not include any portion of such employees' contributions to the System for purposes of: (a) reporting wages or salaries to the Secretary of the Treasury or his delegate on forms W-2; (b) collection of income tax at source on wages and salaries, pursuant to Revenue Ruling 77-462.

(3) The Board of Trustees of the System shall take full responsibility for reporting on Forms 1099 or W-2P, if applicable, and for withholding of taxes at source on distributions from the System and provision of appropriate withholding election to distributees; the return of "employee contributions" made on or after January 1, 1984, shall be treated as such a distribution.

---

Retirement System of Louisiana, Registrar of Voters Employees' Retirement System, Sheriffs' Pension and Relief Fund, Municipal Police Employees' Retirement Systems, and Firefighters' Retirement System.

B. Each board may adopt a plan whereby the employee's contributions to the retirement system shall not be included in the employee's gross income for computation of the taxes under the provisions of the United States Internal Revenue Code. The plan shall provide that the employer pay the employee's share of the contributions directly to the retirement system. The contributions shall be treated as employer contributions only for the purposes of the Internal Revenue Code.

C. After the adoption of the plan by the board, the employer shall pay the amount of the contribution by a reduction in the salary of the employee or an offset against future salary or a combination of both. These funds shall be paid from the same source of funds which is used in paying earnings to the employee. The employee's participation in the plan shall not be optional.

D. The employer shall continue to withhold federal and state income taxes based upon these contributions until the Internal Revenue Service or the federal courts rule that pursuant to Section 414(h) of the Internal Revenue Code, the contributions made under this Section shall not be included in the gross income of the employee and once approved, the contributions shall not be included as gross income until such time as the funds are distributed or made available.

E. Any deductions from an employee's gross income, during the highest thirty-six consecutive months of employment prior to retirement, for purposes of tax sheltering said deductions under the provisions of this Section shall be included in the base from which retirement benefits are to be computed for the purposes of ascertaining an employee's average compensation.

[The section, as added by Acts 1982, No. 843, sec. 1, was designated by R.S. 42:697.11 but was redesignated as R.S. 42:697.12 on authority of La.R.S. 24:253, presumably because earlier in 1982 another statute had added a different section as R.S. 42:697.11.]

In response to LASER & Co.'s letter of June 29, 1983, in which it requested a ruling concerning the Federal income tax treatment of certain contributions to LASER & Co., respondent ruled, in a letter dated August 23, 1983, inter alia, that the "proposed resolution concerning the pick-up of employee contributions satisfy [sic] all the requirements necessary for employee contributions to be considered picked up pursuant to Code section 414(h)." This ruling was made subject to LASER & Co. being a qualified plan under section 401(a).

Each judge of the State of Louisiana is paid monthly by a check issued by the office of the judicial administrator. Various deductions are withheld from this check, including, where applicable, the judge's employee contributions to LASER & Co. The procedures for withholding employee contributions from the salaries of participating judges used by the office of the judicial administrator did not change after the pick-up provisions became effective.

For 1981, the Wage and Tax Statements, Forms W-2, issued for judges participating in LASER & Co. included in wages, tips, and other compensation the 11-percent employee contributions made by these judges to LASER & Co. After 1983, for years after the pick-up provisions became effective and LASER & Co. began to operate under them, the W-2 forms issued to participating judges do not include in wages, tips, and other compensation the 11-percent employee contribution made to LASER & Co. This contribution is shown separately on the W-2 form as an annuity. After the pick-up provisions became effective, the W-2 forms showed a reduction in salary of the participating judges although the pick-up provisions have no effect on the statutory salary of these judges. The statutory salary for Louisiana judges has not been reduced by the legislature.

OPINION

Petitioners contend that contributions Foil made under the Judicial Plan in 1981 are excludable [8] from gross income

[8]Petitioners aver, on brief, that Foil's contributions "are deductible from gross income". However, all the provisions that petitioners rely on are exclusion provisions. We do not understand petitioners to be contending that they are entitled to deductions under, e.g., sec. 162. See *Sims v. Commissioner,* 72 T.C. 996, 1005-1009 (1979).

for one of the following reasons:

(1) the Judicial Plan is an "eligible State deferred compensation plan" as that term is defined in section 457; alternatively,

(2) the Judicial Plan is a "qualified State judicial plan" as defined by section 131(c)(3) of R.A. 1978, as amended by section 252 of TEFRA, and so all contributions Foil made under the Judicial Plan are excludable from his gross income until made available to him; alternatively,

(3) the contributions Foil made under the Judicial Plan in 1981 are excludable from his gross income under the pick-up provisions of section 414(h).

Respondent contends that for 1981, (1) the System's Plan is tax-qualified under section 401(a) and includes a trust exempt under section 501(a); (2) the exclusion petitioners seek is governed by section 131(c)(2) of R.A. 1978; (3) section 131(c)(2) does not not provide benefits to such tax-qualified plans; and (4) therefore petitioners are not entitled to the claimed exclusion.

We agree with respondent that Foil's 1981 employee contributions to LASER & Co. are not excludable from petitioners' gross income for that year.

### Summary and Conclusions

In general, a participant in a tax-qualified employee plan is not required to take into income his or her employer's contribution under the plan until the plan's benefits are distributed to the participant (sec. 402(a)(1)), but a participant in a plan that is not tax-qualified is to take the employer's contribution into income as soon as the contribution becomes transferable or is no longer subject to a substantial risk of forfeiture (secs. 402(b) and 83).

In general, if the plan is contributory, then the participant may neither deduct nor exclude his or her own contributions to the plan, whether or not the plan is tax-qualified. (A major exception to this general rule is provided for in the case of qualified cash or deferred arrangements under sections 401(k) and 402(a)(8).)

Section 457, enacted in 1978, provides special rules for State and local governmental plans which meet a series of detailed requirements (sec. 457(b)), under which deferred

compensation is not includable in income until it "is paid or otherwise made available to the participant". Sec. 457(a). However, if the State or local governmental plan fails to meet those requirements, then the deferred compensation is includable in income as soon as there is no substantial risk of forfeiture. Sec. 457(e)(1) (now, sec. 457(f)(1)). Certain categories of State or local governmental plans are not subject to this inclusion rule (the categories are listed in sec. 457(e)(2), now sec. 457(f)(2)).

In 1982, the Congress amended the effective date provisions of the 1978 Act so as to exclude "any qualified State judicial plan" from all of section 457—both the income exclusion portion of section 457 and the income inclusion portion of that section.

We conclude as follows:

(1) The relevant plan is the Judicial Plan, as petitioners contend, and not the System's Plan, as respondent contends.

(2) The Judicial Plan is a qualified State judicial plan (within the meaning of sec. 131(c)(3) of R.A. 1978, as added by sec. 252 of TEFRA), as petitioners contend.

(3) As a result of section 131(c)(3)(A) of R.A. 1978, as added by section 252 of TEFRA, section 457 does not apply to any qualified State judicial plan and so section 457 does not apply to the Judicial Plan.

(4) It follows that participants in the Judicial Plan are not entitled to the deferral provided by section 457(a), or by section 131(c)(2) of R.A. 1978.

(5) Also, the Judicial Plan is not a "pick-up" plan under section 414(h)(2) for 1981.

(6) As a result of the foregoing, petitioners are not entitled to exclude from their 1981 gross income the amounts that Foil contributed in 1981 to the Judicial Plan.

## I. The Plan in Issue

Petitioners maintain that, because of the judges' special interests and concerns, the drafters of La.R.S. 13:11 et seq. intended to set up a plan for the judiciary and court officers separate from the plan covering other State employees in title 42 of La.R.S. They argue that this intent is evidenced by the following: (1) The Judicial Plan is contained in a

separate portion (La.R.S. 13:11 et seq.) of the Louisiana Revised Statutes from title 42 of La.R.S., (2) the Judicial Plan is entitled "The Retirement Plan for Judges and Officers of the Court", and (3) the Judicial Plan provides benefits, contributions, and methods of election unlike any for employees covered by title 42 of the La.R.S. plan. They further maintain that the legislature used the already established LASER & Co. merely for administrative convenience in the judiciary's separate plan, collecting and investing the money, and distributing the retirement benefits. Petitioners contend that LASER & Co. administers several plans whose participants all contribute, under their respective plans, to the Title 42 Trust.

Respondent maintains that the Louisiana Legislature provided for the implementation of La.R.S. 13:11 et seq. as part of a single plan administered by LASER & Co. He points out that La.R.S. 13:26 makes applicable to Louisiana judges and court officers the provisions of La.R.S. title 42, and that the System's Plan consists of La.R.S. 13:11-26, 24:26, 42:541-719, and 56:681-692. Respondent, thus, concludes "that there was but one plan administered by [LASER] & Co. during 1981; the System's Plan".

We agree with petitioners that, at least for purposes of our discussion regarding the applicability of section 457 and the effect thereon of section 131(c) of R.A. 1978, as amended by section 252 of TEFRA, La.R.S. 13:11 et seq. comprises a separate plan from the basic plan for State employees contained in La.R.S. 42:541 et seq.

We have not found, and the parties have not cited to us any case which discusses the standards to be used in determining when an arrangement is a separate plan and when it is merely part of a larger plan. However, the Internal Revenue Code and the regulations promulgated thereunder recognize that plans may be considered separately or together for different purposes. For example, (1) section 401(a)(5) specifically permits separate plans to be treated as one plan for purposes of determining whether two or more plans of an employer satisfy the nondiscrimination provisions of section 401(a)(4); (2) section 415(f) requires separate plans to be treated as one plan for purposes of applying the limitations of section 415(b), (c), and (e); and (3)

section 1.415-3(d), Income Tax Regs., deems to be a defined contribution plan mandatory or voluntary employee contributions made pursuant to the terms of a defined benefit plan for purposes of applying the limitations on benefits and contributions under section 415. This suggests that the lines between one-plan-with-separate-provisions-for-different-employees, on the one hand, and separate-plans-for-different-employees, on the other hand, is far from clear.

Both sides introduced the testimony of fact and expert witnesses in support of their contentions that La.R.S. 13:11 et seq. was or was not a separate plan. We conclude that all the expert witnesses are knowledgable as to Louisiana law; however, we must weigh their opinions in light of each expert's qualifications and all other relevant evidence. *Anderson v. Commissioner*, 250 F.2d 242, 249 (5th Cir. 1957), affg. a Memorandum Opinion of this Court;[9] *Johnson v. Commissioner*, 85 T.C. 469, 477 (1985).

Both sides discuss the implications of *Moise v. Louisiana State Emp. Retirement System*, 371 So. 2d 1171 (La. Ct. App. 1979), writ denied 373 So.2d 509 (La. 1979). Moise, a court administrator, was a member of LASER & Co. and made contributions under the provisions of title 42 of La.R.S. After the enactment of the title 13 provisions in 1976, Moise sought to become eligible under these new provisions, to receive credit for prior service, and to have refunded to him his prior contributions. He relied on La.R.S. 13:21A, which provided for benefits for prior service without contributions. LASER & Co. relied on La.R.S. 13:17, which provided for transfers from other Louisiana retirement systems to LASER & Co. of both (1) credits for prior service under the other retirement systems and (2) employer and employee contributions that had been made under the other systems.

The Court of Appeal for the First Circuit harmonized the two statutory provisions by concluding that the legislature meant (1) to provide credit without contributions only where the member previously had not been required to contribute, but also (2) to require previously contributed amounts to stay in a retirement system if the member was to be given

---

[9]T.C. Memo. 1956-178.

credit for the service with respect to which the amounts had been contributed.

In the course of the *Moise* opinion, the Court of Appeal stated as follows (371 So. 2d at 1174):

Plaintiff's argument that the Plan is a totally new retirement plan distinct from the Louisiana State Employees' Retirement system, with the latter simply serving as an administrator, runs counter to the statute which has provisions for judges and judicial officers to become members of the Louisiana State Employees' Retirement System.

In light of the Louisiana Court of Appeal's analysis and harmonizing of La.R.S. 13:17 and 13:21A, it is difficult to understand why it would make a difference to Moise's claim whether the newly enacted provisions constituted a separate plan for purposes of that suit.

Based on this record as a whole, we are persuaded that, in enacting La.R.S. 13:11 et seq., the Louisiana Legislature intended to establish a separate retirement plan for the State judiciary. The major consideration pointing to a single plan is that the legislature provided that the judicial retirement arrangement be administered by LASER & Co. On the other hand, the legislature's intent is shown by the following: (1) the legislature placed the special retirement plan provisions for judges and court officers in title 13 of La.R.S., which pertains solely to the judiciary; (2) it included in La.R.S. 13:11 et seq. provisions for eligibility to participate in the plan and to receive retirement benefits, disability retirement pay, and survivor benefits which differ materially from similar provisions contained in title 42 of La.R.S.; (3) it made provision for additional benefits payable to the participants and for additional employee contributions payable by the participants greater than similar provisions contained in title 42 of La.R.S.; and (4) it incorporated into the plan provisions contained in title 42 of La.R.S., but made the title 42 of La.R.S. provisions, where necessary, subordinate to the title 13 of La.R.S. provisions.

Based on these facts, for the purposes of our analysis, we conclude that the provisions of La.R.S. 13:11 et seq., as supplemented where appropriate by the provisions of La.R.S. 42:541 et seq., comprise a separate retirement plan or arrangement for applicable Louisiana judges and court officers. This is the Judicial Plan.

## II. Section 457, Section 131 of R.A. 1978, and Section 252 of TEFRA

Since we believe that our conclusion as to the effect of section 252 of TEFRA disposes of the Section 457 and related issues, we begin our analysis there.

Petitioners maintain that section 252 of TEFRA was drafted and enacted to avoid the harsh result of the application of the section 457(e)(1) "penalties" to State judicial plans that are the regular retirement plans for a State. Petitioners contend that the purpose of section 252 of TEFRA, as it was reported by the Congress' Conference Committee on TEFRA, "was that participants in certain State judicial deferred compensation plans would not be required to include benefits accruable in gross income upon vesting." They concluded that "If a 'qualified State judicial plan' is not subject to the rule making the compensation taxable currently, then the plan thereby receives the tax benefits of Section 457." Petitioners maintain that the judges' plan is a "qualified State judicial plan" as defined in section 252 of TEFRA, and, as such, even if it is not an eligible State deferred compensation plan as defined in section 457, according to the legislative intent, the rule of section 457(e)(1) does not apply and Foil's 1981 employee contributions are not taxed until made available to him.

Respondent maintains that section 252 of TEFRA removes "qualified State judicial plans" from the application of section 131 of R.A. 1978 but it does not provide any specific direction with regard to the tax treatment of the participants in such plans. Accordingly, he contends, the tax treatment of deferred compensation relating to qualified State judicial plans is determined as if section 457 had not been enacted.

We agree with respondent.

### A. The Statutory Framework; Legislative History

In general, a cash basis taxpayer must report gross income for the year in which it is received. Sec. 451(a). Usually, this is the year in which it is actually received; however, if gross income is constructively received before it is actually received, then the income is taxable for the

earlier year of constructive receipt. *Romine v. Commissioner*, 25 T.C. 859, 873 (1956). Under the doctrine of constructive receipt, income not actually reduced to a taxpayer's possession is deemed to be received by the taxpayer in the year during which it is "credited to his account, set apart for him, or otherwise made available so that he may draw upon it at anytime, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." Sec. 1.451-2(a), Income Tax Regs.; *Blyler v. Commissioner*, 67 T.C. 878, 884 (1977). In addition, under the cash-receipts-and-disbursements method of accounting, a taxpayer is required to report any item of income that is received in cash or in the form of a "cash equivalent." Secs. 1.61-2(d), 1.446-1(a)(3), and 1.446-1(c)(1)(i), Income Tax Regs.

On February 3, 1978, respondent published in the Federal Register Proposed Income Tax Regs. section 1.61-16 relating to the tax treatment of amounts of compensatory payments deferred under certain nonqualified compensation reduction plans or arrangements. Proposed section 1.61-16(a) provided as follows (43 Fed. Reg. 4639 (1978)):

Sec. 1.61-16. Amounts payments of which are deferred under certain compensation reduction plans or arrangements.

(a) *In general.* Except as otherwise provided in paragraph (b) of this section, if under a plan or arrangement (*other than a plan or arrangement described in sections 401(a),* 403 (a), or (b), or 405(a)) payment of an amount of a taxpayer's basic or regular compensation fixed by contract, statute, or otherwise (or supplements to such compensation, such as bonuses, or increases in such compensation) is, at the taxpayer's individual option, deferred to a taxable year later than that in which such amount would have been payable but for his exercise of such option, the amount shall be treated as received by the taxpayer in such earlier taxable year. For purposes of this paragraph, it is immaterial that the taxpayer's rights in the amount payment of which is so deferred become forfeitable by reason of his exercise of the option to defer payment. 43 Fed. Reg. 4638. [Emphasis added.]

Respondent's announcement stated that these proposed regulations "would reflect a change in the Internal Revenue Service position relating to these plans or arrangements", and were to apply to compensatory payments which the

taxpayer had chosen to defer if the amount would have been payable on or after March 6, 1978, but for the taxpayer's exercise of the option to defer receipt.

The Congress reacted promptly. The reasons for its reaction were set forth as follows in the General Explanation of the Revenue Act of 1978, p. 68 (Comm. Print 1979), by the Staff of the Joint Committee on Taxation:

*Reasons for Change*

The Congress believed that the regulations concerning nonqualifed deferred compensation plans involving an individual election to defer compensation proposed by the Internal Revenue Service on February 3, 1978, if adopted in final form, would have had a serious impact upon the employees of many States and localities. If adopted, the regulations would have prohibited employees of State and local governments from participating in nonqualified, unfunded deferred compensation plans as a means of providing tax-deferred retirement income.

Although the Congress did not believe that State and local government employees should be totally prohibited from participating in unfunded deferred compensation plans, it concluded that limitations should be imposed on the amounts of compensation that can be deferred under these arrangements and allowed to accumulate on a tax-deferred basis. Accordingly, the Congress concluded that a percentage-of-compensation limit on amounts that can be deferred, as well as an absolute dollar limitation to prevent excessive deferrals by highly compensated employees, was necessary.

Almost exactly the same explanation appears in the reports of the Senate Finance Committee (S. Rept. 95-1263, p. 65 (1978), 1978-3 C.B. (Vol. 1) 315, 363) and the House Ways and Means Committee (H. Rept. 95-1445, pp. 52-53 (1978), 1978-3 C.B. (Vol. 1) 181, 226-227). For the foregoing reasons, in section 131 of R.A. 1978, Pub. L. 95-600, 92 Stat. 2763, 2799, the Congress enacted section 457.[10]

---

[10]Sec. 457 provides, in pertinent part, as follows:

SEC. 457. DEFERRED COMPENSATION PLANS WITH RESPECT TO SERVICE FOR STATE AND LOCAL GOVERNMENTS.

(a) YEAR OF INCLUSION IN GROSS INCOME.—In the case of a participant in an eligible State deferred compensation plan, any amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary.

(b) ELIGIBLE STATE DEFERRED COMPENSATION PLAN DEFINED.—For purposes of this section, the term "eligible State deferred compensation plan" means a plan established and maintained by a State—

(1) in which only individuals who perform service for the State may be participants,

Section 457 provides that (1) if an employee or independent contractor performs services for a State government, (2) which State maintains an "eligible State deferred com

---

(2) which provides that (except as provided in paragraph (3)) the maximum that may be deferred under the plan for the taxable year shall not exceed the lesser of—

(A) $7,500, or

(B) 33⅓ percent of the participant's includible compensation,

(3) which may provide that, for 1 or more of the participant's last 3 taxable years ending before he attains normal retirement age under the plan, the ceiling set forth in paragraph (2) shall be the lesser of—

(A) $15,000, or

(B) the sum of—

(i) the plan ceiling established for purposes of paragraph (2) for the taxable year (determined without regard to this paragraph), plus

(ii) so much of the plan ceiling established for purposes of paragraph (2) for taxable years before the taxable year as has not theretofore been used under paragraph (2) or this paragraph,

(4) which provides that compensation will be deferred for any calendar month only if an agreement providing for such deferral has been entered into before the beginning of such month,

(5) which does not provide that amounts payable under the plan will be made available to participants or other beneficiaries earlier than when the participant is separated from service with the State or is faced with an unforeseeable emergency (determined in the manner prescribed by the Secretary by regulation), and

(6) which provides that—

(A) all amounts of compensation deferred under the plan,

(B) all property and rights purchased with such amounts, and

(C) all income attributable to such amounts, property, or rights, shall remain (until made available to the participant or other beneficiary) solely the property and rights of the State (without being restricted to the provision of benefits under the plan) subject only to the claims of the State's general creditors.

A plan which is administered in a manner which is inconsistent with the requirements of any of the preceding paragraphs shall be treated as not meeting the requirements of such paragraph as of the first plan year beginning more than 180 days after the date of notification by the Secretary of the inconsistency unless the State corrects the inconsistency before the first day of such plan year.

\*    \*    \*    \*    \*    \*    \*

(d) Other Definitions and Special Rules.—For purposes of this section—

(1) STATE.—The term "State"— means a State, a political subdivision of a State, and an agency or instrumentality of a State or political subdivision of a State.

\*    \*    \*    \*    \*    \*    \*

(7) COMMUNITY PROPERTY LAWS.—The amount of includible compensation shall be determined without regard to any community property laws.

\*    \*    \*    \*    \*    \*    \*

(e) TAX TREATMENT OF PARTICIPANTS WHERE PLAN OR ARRANGEMENT OF STATE IS NOT ELIGIBLE.—

(1) IN GENERAL.—In the case of a plan of a State providing for a deferral of compensation, if such plan is not an eligible State deferred compensation plan, then—

(A) the compensation shall be included in the gross income of the participant or beneficiary for the first taxable year in which there is no substantial risk of forfeiture of the rights to such compensation, and

(B) the tax treatment of any amount made available under the plan to a participant or beneficiary shall be determined under section 72 (relating to annuities, etc.).

(2) EXCEPTIONS.—Paragraph (1) shall not apply to—

(A) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a),

pensation plan", and (3) that individual is a participant in that plan, then (4) that individual could defer annually amounts of compensation (as long as the deferral does not exceed prescribed annual limitations, generally the lesser of $7,500 or 33⅓ percent of his or her "includible compensation", and any income attributable to the investment of the deferred amounts, until the compensation is paid or otherwise made available to that individual. Sec. 457(a), (b). Moreover, all amounts of compensation deferred under the plan, all property or rights to property purchased with the amounts deferred, and any income earned on property purchased with amounts deferred must remain assets of the State subject only to the claims of the State's general creditors. Sec. 457(b)(6).

Pursuant to section 457(e), any participant in a State deferred compensation plan that does not meet the requirements of an "eligible plan" must include currently in income all compensation deferred under the plan, unless the amounts deferred are subject to a substantial risk of forfeiture, in which case the amounts are includible in gross income in the first taxable year in which there is no substantial risk of forfeitures. According to the legislative history, the tax treatment of participants in an ineligible State deferred compensation plan does not extend to participants in the State's regular retirement plan (whether or not qualified under sec. 401(a)) or whenever section 83 or 402(b) apply to the taxation of deferred compensation. See S. Rept. 95-1263, p. 70 (1978), 1978-3 C.B. (Vol. 1) 315, 368;

---

(B) an annuity plan or contract described in section 403,

(C) a qualified bond purchase plan described in section 405(a),

(D) that portion of any plan which consists of a transfer of property described in section 83, and

(E) that portion of any plan which consists of a trust to which section 402(b) applies.

(3) DEFINITIONS.—for purposes of this subsection—

(A) PLAN INCLUDES ARRANGEMENTS, ETC.—The term "plan" includes any agreement or arrangement.

(B) SUBSTANTIAL RISK OF FORFEITURE.—The rights of a person to compensation are subject to a substantial risk of forfeiture if such person's rights to such compensation are conditioned upon the future performance of substantial services by any individual.

[The subsequent amendments of this provision by sec. 491(d)(33) of the Deficit Reduction Act of 1984 (Pub. L. 98-369, 98 Stat. 494, 851), by sec. 1107(a), of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2426), and by secs. 1011(e), 6064, and 6071(c) of the Technical and Miscellaneous Revenue Act of 1988 (Pub. L. 100-647, 102 Stat. 3460, 3700, 3705), do not affect the instant case. See notes 11 and 12, *infra*, for the effective date and transitional rules included in sec. 131 of R.A. 1978 but not in sec. 457 of the Code and the amendments added by sec. 252 of TEFRA, respectively.]

H. Rept. 95-1445, p. 57 (1978), 1978-3 C.B. (Vol. 1) 181, 231; Staff of the Joint Committee on Taxation, General Explanation of the Revenue Act of 1978, p. 73 (Comm. Print 1979).

Section 131(c) of R.A. 1978, 92 Stat. at 2782[11] made the amendments contained in section 131(a) of R.A. 1978 effective for taxable years beginning after December 31, 1978. Special transitional rules, not included in the text of section 457, were provided in section 131(c)(2) of R.A. 1978, whereby all plans to which the provision applied were given until January 1, 1982, to satisfy the requirements for classification as an eligible State deferred compensation plan. However, pursuant to these transitional rules, the limitation on amounts that could be deferred were effective for all taxable years beginning after December 31, 1978, and the special "catch-up" provisions could be utilized only if the plan actually satisfied the plan requirements of section 457(b). H. Rept. 95-1445, p. 58 (1978), 1978-3 C.B. (Vol. 1) 181, 232; S. Rept. 95-1263, p. 71 (1978), 1978-3 C.B. (Vol. 1) 315, 369; Staff of the Joint Committee on Taxation, General

---

[11] As originally enacted, sec. 131(c) of R.A. 1978 provided as follows:

SEC. 131. DEFERRED COMPENSATION PLANS WITH RESPECT TO SERVICE FOR STATE AND LOCAL GOVERNMENTS.

\*      \*      \*      \*      \*      \*      \*

(c) EFFECTIVE DATE.—

(1) IN GENERAL.—The amendments made by this section shall apply to taxable years beginning after December 31, 1978.

(2) Transitional rules.—

(A) IN GENERAL.—In the case of any taxable year beginning after December 31, 1978, and before January 1, 1982—

(i) any amount of compensation deferred under a plan of a State providing for a deferral of compensation (other than a plan described in section 457(e)(2) of the Internal Revenue Code of 1954), and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary, but

(ii) the maximum amount of the compensation of any one individual which may be excluded from gross income by reason of clause (i) and by reason of section 457(a) of such Code during any such taxable year shall not exceed the lesser of—

(I) $7,500, or

(II) 33⅓ percent of the participant's includible compensation.

(B) APPLICATION OF CATCH-UP PROVISIONS IN CERTAIN CASES.—If, in the case of any participant for any taxable year, all of the plans are eligible State deferred compensation plans, then clause (ii) of subparagraph (A) of this paragraph shall be applied with the modification provided by paragraph (3) of section 457(b) of such Code.

(C) APPLICATIONS OF CERTAIN COORDINATION PROVISIONS—In applying clause (ii) of subparagraph (A) of this paragraph and section 403(b)(2)(A)(ii) of such Code, rules similar to the rules of section 457(c)(2) of such Code shall apply.

(D) MEANING OF TERMS.—Except as otherwise provided in this paragraph, terms used in this paragraph shall have the same meaning as when used in section 457 of such Code.

Explanation of the Revenue Act of 1978, p. 74 (Comm. Print 1979).

The Congress amended section 131 of R.A. 1978 by section 252 of TEFRA, Pub. L. 97-248, 96 Stat. 324, 532.[12] This provision made the amendments made by section 131 of R.A. 1978 inapplicable to qualified State judicial plans. On its face, the language of section 252 of TEFRA appears to be clear and unambiguous.

Section 252 of TEFRA adds a new paragraph to the effective date provisions of section 131 of R.A. 1978. The reference in the new paragraph (3)(A) to "the amendments made by this section" is a reference to the amendments made by section 131 of R.A. 1978; the major such amendment is the one made by section 131(a) of R.A. 1978, adding section 457 to the Internal Revenue Code of 1954. Thus, the direct effect of the new paragraph (3)(A) is to provide that section 457 of the Internal Revenue Code does not apply to "any qualified State judicial plan".

Petitioners, however, quoting from the Conference Committee report (set forth, *infra*), argue that the legislative history shows that the intent of the enacted provision was to ensure that "participants in a qualified State judicial plan are not required to include benefits in gross income merely because there is no substantial risk that the benefits will be forfeited." Petitioners maintain that the intent of section 252 of TEFRA was to treat qualified State judicial

---

[12]Sec. 252 of TEFRA provides as follows:

SEC. 252. DEFERRED COMPENSATION PLANS FOR STATE JUDGES.

Subsection (c) of section 131 of the Revenue Act of 1978 is amended by adding at the end thereof the following new paragraph:

"(3) DEFERRED COMPENSATION PLANS FOR STATE JUDGES —

"(A) IN GENERAL. The amendments made by this section shall not apply to any qualified State judicial plan.

"(B) QUALIFIED STATE JUDICIAL PLAN.—For purposes of subparagraph (A), the term "qualified State judicial plan" means any retirement plan of a State for the exclusive benefit of judges or their beneficiaries if—

"(i) such plan has been continuously in existence since December 31, 1978,

"(ii) under such plan, all judges eligible to benefit under the plan—

"(I) are required to participate, and

"(II) required to contribute the same fixed percentage of their basic or regular rate of compensation as judge,

"(iii) under such plan, no judge has an option as to contributions or benefits the exercise of which would affect the amount of includible compensation,

"(iv) the retirement payments of a judge under the plan are a percentage of the compensation of judges of that State holding similar positions, and

"(v) the plan during any year does not pay benefits with respect to any participant which exceed the limitations of section 415(b) of the Internal Revenue Code of 1954."

plans like other ineligible plans in section 457(e)(2) and not require the inclusion in gross income of deferred contributions in the year in which there is no substantial risk of forfeiture. In other words, under this analysis a qualified State judicial plan would merely be excluded from a risk of the sanctions of section 457(e)(1), but would not be excluded from an opportunity to have the benefits of deferral under section 457(a).

We agree that there is support in the legislative history for petitioners' contention that the Congress intended, in enacting section 252 of TEFRA, to treat qualified State judicial plans like other ineligible plans in section 457(e)(2). However, the legislative history also supports respondent's position that the statute means what it says; i.e., that section 252 of TEFRA removes qualified State judicial plans altogether from the application of section 131 of R.A. 1978.

The House of Representatives passed its version of TEFRA on December 15, 1981; this version did not include any provision comparable to what became section 252 of TEFRA. This provision first appeared in the Finance Committee's bill, which was reported to the Senate on July 12, 1982. In its report, the Finance Committee explained section 252 of TEFRA as follows (S. Rept. 97-494, Vol. 1, pp. 327-328) (1982):

4. Certain State judicial retirement plans (sec. 252 of the bill and sec. 457 of the Code)

*Present Law*

*Eligible State deferred compensation plan*

Under present law (sec. 457(a)), employees of a State or local government or a rural electric cooperative are permitted to defer compensation under an eligible State deferred compensation plan if the deferral does not exceed prescribed annual limits (generally the lesser of $7,500 or 33⅓ percent of includible compensation). Amounts deferred by a participant in an eligible plan, plus any income attributable to the investment of such amounts, are includible in the income of the participant or the participant's beneficiary only when paid or otherwise made available under the plan.

*Treatment of participants in an ineligible plan*

If a deferred compensation plan of a State or local government fails to meet the requirements of an eligible plan, then all compensation deferred under the plan is includible currently in income by the participants unless

the amounts deferred are subject to a substantial risk of forfeiture (sec. 457(e)). If amounts deferred are subject to a substantial risk of forfeiture, then they are includible in the income of participants or beneficiaries in the first taxable year in which there is no substantial risk of forfeiture.

This rule for the tax treatment of participants in an ineligible plan does not apply, however, if the tax treatment of a plan participant is governed by tax rules for the plan that are set forth elsewhere in the Code. For example, the rule does not apply if the ineligible plan is a qualified pension plan (sec. 401(a)), a tax-sheltered annuity program (sec. 403(b)), or includes a trust forming a part of a nonqualified pension plan (sec. 402(b)).

### Reasons for Change

An eligible State deferred compensation plan is a defined contribution plan under which a plan participant is entitled to his account balance consisting of the deferred amounts plus earnings. Retirement plans for State judges are sometimes defined benefit plans under which a participant is entitled to a retirement benefit based upon the pay of sitting judges. Because the participant's benefit under such a plan generally does not depend upon the participant's account balance, the committee believes it is inappropriate to apply contribution limits or other rules designed for defined contribution plans.

### Explanation of Provision

Under the bill, participants in a qualified State judicial plan are not subject to the rule requiring participants in an ineligible plan to include plan benefits in gross income merely because there is no substantial risk that the benefits will be forfeited.

A State's retirement plan for the exclusive benefit of its judges or their beneficiaries is a qualified State judicial plan if (1) the plan has been continuously in existence since December 31, 1978, (2) all judges eligible to benefit under the plan are required to participate and to contribute the same fixed percentage of their basic or regular rate of compensation; and (3) a judge's retirement benefit under the plan is a percentage of the compensation of judges of the State holding similar positions.

In addition, the plan may not pay benefits with respect to a participant which exceed the limit on benefits permitted under qualified plans, and may not provide an option to plan participants as to contributions or benefits the exercise of which would affect the amount of the participant's currently includible compensation.

## The Conference report described this provision as follows (H. Rept. 97-760 (Conf.) at 639 (1982):

### Senate amendment

The Senate amendment provides that participants in a qualified State judicial plan are not required to include benefits in gross income merely because there is no substantial risk that the benefits will be forfeited.

The plan must be a mandatory retirement plan for State judges under which each contributes the same percentage of income and receives a retirement benefit based upon compensation paid to judges holding similar positions. The plan must have been continuously in existence since December 31, 1978, and must meet certain additional requirements. The provision applies to taxable years beginning after December 31, 1978.

### Conference agreement

The conference agreement follows the Senate amendment.

The subsequent General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, prepared by the Staff of the Joint Committee on Taxation states, in pertinent part, as follows (pp. 334-335) (Comm. Print 1979):

### Treatment of participants in an ineligible plan

If a deferred compensation plan of a State or local government fails to meet the requirements of an eligible plan, then all compensation deferred under the plan is includible currently in income by the participants unless the amounts deferred are subject to a substantial risk of forfeiture (sec. 457(e)). If amounts deferred are subject to a substantial risk of forfeiture, then they are includible in the income of participants or beneficiaries in the first taxable year in which there is no substantial risk of forfeiture.

This rule for the tax treatment of participants in an ineligible plan does not apply, however, if the tax treatment of a plan participant is governed by tax rules for the plan that are set forth elsewhere in the Code. For example, the rule does not apply if the ineligible plan is a qualified pension plan (sec. 401(a)), a tax-sheltered annuity program (sec. 403(b)), or includes a trust forming a part of a nonqualified pension plan (sec. 402(b)). * * *

### Explanation of Provision

Under the Act, participants in a qualified State judicial plan are not subject to the rule requiring participants in a State deferred compensation plan that is not an eligible plan to include plan benefits in gross income when there is no substantial risk that the benefits will be forfeited (sec. 457(e)).

This legislative history suggests that the Congress perceived a problem with the reach of section 457, at least as to certain judicial plans, and made an attempt to remedy that problem. Unfortunately, the legislative history does not elucidate clearly the remedy Congress chose to solve the problem. Moreover, the legislative history is somewhat

misleading in that it would appear from the conference report that the conferees adopted section 252 as contained in the Senate amendment passed by the Senate on July 22, 1982. The Senate amendment[13] (the text of which is identical to the Senate Finance Committee amendment described in S. Rept. 97-494, *supra*) appears to be consistent with the legislative explanations and with the explanations presented by petitioners in the instant case. However, the text of section 252 as reported to the Congress by the conferees, and subsequently enacted into law, differs importantly from the Senate amendment.

Even though the conferees did not adopt the text of section 252 as contained in the Senate amendment, the conference report, without further explanation, states that the conference agreement "follows the Senate amendment."

Section 252 of the Senate amendment is virtually identical to H.R. 5630, a bill which was introduced on February 25, 1982, by Representative Pickle to supersede H.R. 4881.[14] This latter bill had been introduced by Representa-

---

[13]Sec. 252 as contained in the Senate amendment read as follows:

SEC. 252. DEFERRED COMPENSATION PLANS FOR STATE JUDGES.

(a) IN GENERAL.—Paragraph (2) of section 457(e) (relating to tax treatment of participants where plan or arrangement of State is not eligible) is amended by striking out "and" at the end of subparagraph (D), by striking out the period at the end of subparagraph (E) and inserting in lieu thereof ", and", and by adding at the end thereof the following new subparagraph:"(F) a qualified State judicial plan.".

(b) QUALIFIED STATE JUDICIAL PLAN DEFINED —Paragraph (3) of section 457(e) is amended by adding at the end thereof the following new subparagraph:

"(C) QUALIFIED STATE JUDICIAL PLAN —The term 'qualified State judicial plan' means any retirement plan of a State for the exclusive benefit of judges or their beneficiaries if-

"(i) such plan has been continuously in existence since December 31, 1978,

"(ii) under such plan, all judges eligible to benefit under the plan—

"(I) are required to participate, and

"(II) are required to contribute the same fixed percentage of their basic or regular rate of compensation as judge,

"(iii) under such plan, no judge has an option as to contributions or benefits the exercise of which would affect the amount of includible compensation,

"(iv) the retirement payments of a judge under the plan are a percentage of the compensation of judges of that State holding similar positions, and

"(v) the plan during any year does not pay benefits with respect to any participant which exceed the limitations of section 415(b).

Paragraph (1) of subsection (d) shall not apply for purposes of this subparagraph.".

(c) EFFECTIVE DATE.—The amendments made by this section shall apply to taxable years beginning after December 31, 1978.

[Senate Amendment to H.R. 4961, July 23 (legislative day, July 12), 1982.]

[14]H.R. 4881 differed from H.R. 5630 in that the earlier bill, in defining "qualified State judicial plan", (1) provided that such a plan could cover only elected judges and (2) included the following limitation:

"(v) judges participating in the plan are not eligible to participate in any eligible State deferred compensation plan on the basis of judicial service covered by the plan,"

tive Pickle for himself and Representative Archer, both of Texas, on November 4, 1981. The text of H.R. 4881 was virtually identical to the text of S. 1855, a bill which was introduced by Senator Bentsen for himself and Senator Tower, also both of Texas, on November 17, 1981.[15] Thus, H.R. 4881, H.R. 5630, and S. 1855 are a proper part of the legislative history of section 252 of TEFRA.

The legislative history pertaining to H.R. 4881, H.R. 5630, and S. 1855 sheds light on Congress' intent in enacting section 252 of TEFRA. On March 16, 1982, Representative Pickle presented the following statement at a hearing held on H.R. 5630 and various other tax bills (Hearing Before the Subcommittee on Select Revenue Measures of the Committee on Ways and Means, House of Representatives, 97th Cong., 2d Sess., Serial 97-73, 161-164 (1982):

STATEMENT OF HON. J.J. PICKLE, A REPRESENTATIVE IN CONGRESS FROM THE STATE OF TEXAS

Thank you, Mr. Chairman, for this opportunity to explore the applicability of Section 457 of the Internal Revenue Code to certain State Judicial retirement plans.

*Section 457 was enacted by Congress in 1978 in response to questions raised by proposed Treasury regulations which dealt with non-qualified salary reduction deferred compensation arrangements.* Section 457 was adopted to clarify the taxation of benefits under optional salary reduction arrangements sponsored by State and local governments. The legislative history of Section 457 supports my view that *the provision was not meant to address the regular mandatory retirement plans maintained by the State and local governments.*

*       *       *       *       *       *       *

Under Internal Revenue Service regulations that become final beginning in 1982, if a plan fails to satisfy the requirements of an eligible State deferred compensation plan, Section 457(e)(1) provides that compensation deferred under such a plan is currently includible in a participant's income for the first taxable year in which there is no substantial risk of forfeiture—that is, upon vesting. However, Congress provided an exception from this treatment for certain plans such as qualified section 401(a) plans, tax-deferred annuity plans, etc. The Service recognized at the time

---

[15]S. 1855 was included by floor amendment in H.R. 4717 (Miscellaneous Revenue Act of 1982, Pub. L. 97-362, 96 Stat. 1726) but was deleted from that bill in conference because a similar provision was included in TEFRA, which had become law about 1 month before the Conference Committee report on the Miscellaneous Revenue Act of 1982. See 127 Cong. Rec. S 15578-15579 (daily ed. Dec. 16, 1981); 97-929 (Conf.) at 27 (1982), 1983-1 C.B. 377, 382.

it promulgated the proposed Section 457 regulations that there are State plans that are *the regular retirement plan of the State but which do not qualify as an eligible State deferred compensation plan under the 457(b) structural requirements* and which do not come within any of the exceptions to Section 457(e)(1). Thus, participants in these plans would appear to be subject to the severe tax treatment requiring the inclusion of all such deferred compensation income in taxable income immediately upon vesting.

\* \* \* \* \* \* \*

*H.R. 5630 is in no way aimed at weakening or circumventing the reform that was brought about by Section 457. It contains no loopholes for the kind of optional deferred compensation arrangements limited by the 1978 act.* This exception, for certain state judicial plans is very narrowly drawn and provides that the judicial plans must be regular, mandatory retirement plans for service as a judge. The bill does not allow additional, optional contributions by judges that could affect includible compensation, thus helping to carry out the original intent of Section 457. \* \* \*

[Emphasis added.]

Six months earlier, Representative Pickle had made substantially the same statement on the occasion of his introduction of H.R. 4881. 127 Cong. Rec. E 5125-5126 (daily ed. Nov. 4, 1981).

Senator Bentsen's statements on November 17, 1981, in introducing S. 1855, and on December 4, 1981, in a prepared statement presented at a hearing held on various bills, including S. 1855, in most instances echoed the statements of Representative Pickle quoted above. However, Senator Bentsen explained that S. 1855 "would add to *the exceptions from section 457* State judicial plans that are the regular, exclusive, mandatory plan for service as an elected State judge." (Emphasis added.) 127 Cong. Rec. S 13561 (daily ed. Nov. 17, 1981); Hearing Before the Subcommittee on Savings, Pensions, and Investment Policy, Committee on Finance, United States Senate, 97th Cong., 1st Sess. 46-47 (1981).

The foregoing statements by the initial sponsors of the proposals that became section 252 of TEFRA, both of whom were members of their respective tax-writing committees when TEFRA was enacted, and earlier when R.A. 1978 was enacted, provide support for the idea that there was no intention to allow qualified State judicial plans to have "one-way street" treatment. That is, there was no intention

to allow such a plan to both reap the benefits of section 457(a) if the plan qualified under section 457(b), but escape the sanction of section 457(e)(1) if the plan failed to so qualify.

Indeed, it would appear from this legislative history that the early drafters of section 252 of TEFRA understood that ineligible section 457 plans which were excluded from section 457(e)(1) pursuant to section 457(e)(2) also were excluded altogether from the provisions of section 457.[16]

We have found nothing in the legislative history that would require us to conclude that the Congress did not mean exactly what it said in the text of TEFRA section 252. See *Gunther v. Commissioner,* 92 T.C. 39, 56-57, 60, 64-65 (1989); *Pallottini v. Commissioner,* 90 T.C. 498, 503 (1988).

If we may paraphrase the conclusion and direction of the Supreme Court in *Aaron v. SEC,* 446 U.S. 680, 700 (1980), "It seems clear, therefore, that the legislative history, albeit ambiguous may be read in a manner entirely consistent with the plain meaning of [sec. 252 of TEFRA]. In the absence of a conflict between reasonably plain meaning and legislative history, the words of the statute must prevail." (Fn. refs. omitted.) See also *TVA v. Hill,* 437 U.S. 153, 173 (1978). We agree with respondent that the tax treatment of contributions under a qualified State judicial plan is not determined under section 457 or any other part of section 131 of R.A. 1978, as amended by section 252 of TEFRA.[17]

---

[16]This is the approach followed in the regulations. See sec. 1.457-2(b), Income Tax Regs. In that regulation, the term "plan" for purposes of the definition of "eligible State deferred compensation plan" is deferred as excluding any agreement or arrangement described in sec. 1.457-3(b), Income Tax Regs. The latter regulation describes the categories of agreements or arrangements listed in sec. 457(e)(2). Therefore, the former regulation excludes from the benefits of sec. 457(a) the categories of agreements or arrangements listed in sec. 457(e)(2). Thus, the regulations treat a sec. 457(e)(2) listing as essentially equivalent to an exclusion from sec. 457 altogether.

[17]We note the irony that, on answering brief in another issue in the instant case, petitioners make the following statement:

It is improper to resort to legislative history where the statute is clear. *U.S. v. Prudential Ins. Co. of America,* 461 F.2d 280 (5th Cir. 1972); *U.S. v. Marett,* 325 F.2d 28 (5th Cir. 1963). In the event Congress makes a choice of language which brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators. *Barr v. United States,* 324 U.S. 83 (1945); *Zuanich v. Commissioner,* 77 T.C. 428 (1981); *Rechner v. Commissioner,* 30 T.C. 186 (1958).

## B. Analysis

We now consider whether the Judicial Plan is a qualified State judicial plan as defined in section 252 of TEFRA.

Petitioners contend that the Judicial Plan meets all the requirements of section 252 of TEFRA and that it is a qualified State judicial plan. Respondent takes the position that the Judicial Plan is not a qualified State judicial plan. We hold respondent to concessions that he made at the start of the trial, and we agree with petitioners on this point.

Before we began to take testimony in the instant case, respondent's counsel agreed that the only element that could cause the Judicial Plan to fail to be a qualified State judicial plan is the requirement of section 131(c)(3)(B)(iii) of R.A. 1978, as added by section 252 of TEFRA. A key witness for respondent was not then available, because that witness had been injured and was advised by his physician not to travel the 80 miles to the trial city. As a result, only a partial trial was held and the trial was resumed some 6 months later. At the resumption of the trial, when the Court sought to determine whether the parties had, in the interval, settled some of their disputes, respondent's counsel at first confirmed his prior contention, but then stated that, as to this issue, respondent disputed only whether the Judicial Plan met the requirement of section 131(c)(3)(B)(ii)(I) of that provision. For reasons set forth in the Court's memorandum sur order denying respondent's motion to be relieved from his concession, we held that it was too late for respondent to change his position 6 months after the start of the trial and after all of petitioners' witnesses had completed their testimony.

On brief, respondent continues to argue section 131(c)(3)(B)(ii)(I) of R.A. 1978, as amended by section 252 of TEFRA; we continue to refuse to consider that argument in the instant case. On brief, respondent fails to argue section 131(c)(3)(B)(iii) of R.A. 1978, as amended by section 252 of TEFRA; we treat this as, in effect, a concession by respondent. See subparagraphs (4) and (5) of Rule 151(e);[18] *Money v. Commissioner*, 89 T.C. 46, 48 (1987).

---

[18] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice & Procedure.

We conclude that, for purposes of the instant case (see *C. Alternative Consideration, infra*), the Judicial Plan is a qualified State judicial plan.

We have concluded, *supra*, that the tax treatment of contributions under a qualified State judicial plan is not determined under section 457 or any other part of section 131 of R.A. 1978, as amended by section 252 of TEFRA. We have also concluded that petitioners have succeeded in persuading us that Foil's 1981 employee contributions were made under the Judicial Plan and that the Judicial Plan is a qualified State judicial plan. It follows that Foil's 1981 employee contributions are not entitled to deferral treatment under section 457 or any other part of section 131 of R.A. 1978, as amended by section 252 of TEFRA.

We next consider what is the proper tax treatment of Foil's 1981 employee contributions.

Gross income includes compensation for services. Sec. 61(a)(1).[19]

This Court has held that employee contributions required under a retirement plan which did not differ materially from the Judicial Plan here in issue were not excludable from the taxpayer's gross income because economic benefits resulted from the contributions, and there was an implied consent sufficient to require the inclusion in income. *Sims v. Commissioner*, 72 T.C. at 1000-1001, and cases cited therein. See also *Zwiener v. Commissioner*, 743 F.2d 273 (5th Cir. 1984), affg. a Memorandum Opinion of this Court.[20] We also have held that an employee-participant in a pension plan maintained by a local governmental unit had impliedly consented to participate in the plan, for which mandatory employee contributions were required, by accepting employment with the governmental unit and remaining in that employment. *Sibla v. Commissioner*, 68 T.C. 422, 428 (1977), affd. on another issue 611 F.2d 1260 (9th Cir. 1980).

Foil's employer (the State of Louisiana) established the level of salary to be paid as compensation for Foil's services as District Court judge. The employer also established a

---

[19]SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

[20]T.C. Memo. 1983-659.

retirement plan with certain benefits, which required Foil to contribute under the plan 11 percent of what was designated as Foil's salary. Petitioners do not maintain that Foil did not receive any economic benefit from the Judicial Plan or that he did not consent, impliedly or actually, to participate in the Judicial Plan.

We conclude that Foil is not entitled to defer inclusion in income of the amount of his 1981 employee contributions under section 457 or any other part of section 131 of R.A. 1978, as amended by section 252 of TEFRA. In the absence of special treatment under these provisions, Foil's 1981 employee contributions are includable in petitioners' 1981 income (except to the extent that section 414(h)(2) might provide otherwise; that provision is discussed under *III. Section 414(h)—The Pick-Up Provisions, infra*).

We hold for respondent on this issue.

## C. Alternative Considerations

Our analysis (II. B., *supra* and III, *infra*) disposes of the instant case, and ordinarily we would be inclined not to deal with other arguments that would not change the result. However, numerous other untried cases docketed in this Court present what appears to be essentially the same dispute and it may be appropriate to deal with other arguments in order to avoid the likelihood of a series of trials (or, at least, separate submissions), each of which would focus on other facets of the matter already before us. Under these circumstances we proceed to consider some of the alternative contentions that have been presented. Since petitioners have not contended that they would be entitled to the deferral they seek even if the System's Plan (and not the Judicial Plan) were the relevant plan, we will not decide how they would fare under the System's Plan. Also, we will not decide whether the 9-percent employer's contributions were excludable. Finally, we will not decide whether sections 457(a) and 457(e)(1) deal with exclusion and inclusion of (1) only employee contributions, or (2) the sum of both employee and employer contributions (see, e.g., *Edwin's, Inc. v. United States,* 501 F.2d 675, 679 (7th Cir. 1974)), or (3) the then present value of the employee's right to retirement benefits to be paid at a later date (see sec. 457(d)(6)). See

*Concord Consumers Housing v. Commissioner,* 89 T.C. 105, 106 n. 3 (1987); *Estate of Fusz v. Commissioner,* 46 T.C. 214, 215 n. 2 (1966).

Before, during, and after the taking of testimony in the instant case, the Court made clear to the parties the Court's impression that the two sides were on the "wrong" sides of the issue as to whether the Judicial Plan was a qualified State judicial plan within the meaning of section 131(c)(3) of R.A. 1978, as added by section 252 of TEFRA. That is, if petitioners were to prevail in their contention that the Judicial Plan was a qualified State judicial plan, then petitioners would lose their case; if respondent prevailed in his contention that the Judicial Plan was not a qualified State judicial plan, then petitioners would have survived a major hurdle in their efforts to exclude Foil's contributions from their income. The parties nevertheless persisted in their contentions. As appears in part II. B. of this opinion, the Court has agreed with petitioners that the Judicial Plan was a qualified State judicial plan, and has concluded from this that petitioners must lose their case. We now consider what would have been the outcome if the Judicial Plan had not been a qualified State judicial plan.

Petitioners contend that the Judicial Plan is an eligible State deferred compensation plan; thus, under section 457(a), they are entitled to exclude from their 1981 income Foil's 1981 contributions to the Judicial Plan.

Respondent contends as follows: (1) For 1981, the exclusion is governed by section 131(c)(2) of R.A. 1978, the transition rules, rather than section 457; (2) plans which are tax-qualified under section 401(a) and include trusts exempt under section 501(a) are not eligible for deferrals under section 457 or the transition rules, the Judicial Plan is tax-qualified under section 401(a) and includes a trust that is exempt under section 501(a), therefore the Judicial Plan is not eligible for deferrals under section 457 or the transition rules; and (3) deferral is not available for contributions held in trust whether or not the plan is tax-qualified or the trust is tax-exempt, Foil's contributions were held in trust, therefore Foil's contributions may not be deferred.

Petitioners rejoin that, if the Judicial Plan fails to meet one or another of the requirements of section 457(b), then

petitioners are still eligible for deferral because (1) the final flush language of section 457(b) delays disqualification from deferral until plan years beginning more than 180 days after respondent notifies the plan that it is disqualified, and respondent failed to so notify the plan, and (2) the transition effective date rules for section 457 (sec. 131(c)(2) of R.A. 1978) provide for the exclusion.

We agree with respondent.

### 1. The Judicial Plan is Not an Eligible State Deferred Compensation Plan

Section 457(b) provides that, in order for a plan to be an eligible State deferred compensation plan (hence, a plan the participants in which are eligible for income deferral benefits under section 457(a)), a series of requirements must be satisfied. Since these requirements are in the conjunctive, the plan fails to qualify unless petitioners carry their burden of proving (*Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a)) that the plan satisfies each of the controverted requirements.[21]

We deal with the requirement imposed by paragraph (6) of section 457(b), that the plan be one—

(6) which *provides that—*
    (A) all amounts of compensation deferred under the plan, * * *

shall remain (until made available to the participant or other beneficiary) *solely the property* * * * *of the State* (without being restricted to the provision of benefits under the plan) *subject only to the claims of the State's general creditors.* [Emphasis added.]

La.R.S. 13:18 requires Foil to contribute to LASER & Co. both (1) "the regular employee contribution required by law to be paid into the Louisiana State Retirement System by its members," and (2) an amount equal to 4 percent of his salary. Louisiana is required to contribute an amount equal to 9 percent of Foil's salary. La.R.S. 42:542 establishes LASER & Co. as a State agency with "the power and privileges of a corporation." La.R.S. 42:541provides that LASER & Co. is to be managed by a board of trustees.

---

[21]Respondent concedes, for purposes of the instant case, that the plan (whether the Judicial Plan or the System's Plan) satisfies the requirements of paragraphs (1), (3), (4), and (5) of sec. 457(b).

La.R.S. 42:651 provides that each month the employing agency is to transmit to the board the employer contributions and an amount equal to the withheld employee contributions. La.R.S. 42:647 authorizes the board to invest its available funds and to buy, sell, or otherwise dispose of any of the securities of LASER & Co. La.R.S. 42:656 authorizes LASER & Co. to keep cash in bank accounts. La.R.S. 13.26 provides that the La.R.S. title 42 provisions apply to the retirement plan for judges, except as otherwise provided in the La.R.S. title 13 provisions.

The parties have stipulated that all the contributions under the Judicial Plan are held in the Title 42 Trust, created under La.R.S. 42:541 et seq., and that the Title 42 Trust is exempt from tax under section 501(a).

*La. State Employees' Retirement v. State, Etc.,* 423 So.2d 73 (La. Ct. App. 1982), writ denied 427 So. 2d 1206 (La. 1983), was a declaratory judgment proceeding by LASER & Co. and several other Louisiana government retirement systems to interpret Louisiana State constitutional restrictions on the use of "public/state funds". La.R.S. 42:647 (as to LASER & Co.) and statutes applying to the other retirement systems specifically authorized investments in private corporations' stock, while the Louisiana Constitution, provided as follows (article 7, sec. 14(A)):

Sec. 14. Donation, Loan, or Pledge of Public Credit

Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.

The Court of Appeal for the First Circuit agreed with LASER & Co. (and its colitigants) "that funds belonging to these retirement systems are not public/state funds as contemplated by Article 7, Section 14(A)", and so the constitutional limitation did not prevent LASER & Co. (and its colitigants) from investing those funds as permitted by statute. In the course of arriving at its conclusion, the Court of Appeal explained as follows (423 So. 2d at 75):

The facts of *Bogalusa* are inapposite on one critical point: the funds involved there were public/state funds. The funds involved here consist of

contributions made by the individual members of the retirement systems and matching contributions by the State. The State contributions are in the nature of fringe benefits or additional compensation. The funds here belong to the members of the systems. Neither the State nor the general public has any proprietary interest in same. These funds are in trust for the members of the systems. Construing the article in its entirety, we hold that the constitutional aim was to prohibit the use of public/state funds for private investment, but that funds belonging to these retirement systems are not public/state funds as contemplated by Article 7, Section 14(A), and appellees may invest same in accordance with the statutory authority vested in them in La.R.S. 42:647, La.R.S. 17:671, La.R.S. 17:961, and La.R.S. 17:1288. The decision of the trial court is affirmed at appellant's costs. Costs in this matter amount to $352.44.

AFFIRMED.

We take it, from the explanation by the Court of Appeal, that, under the Louisiana Constitution and statutes, the Judicial Plan's funds in the Title 42 Trust are not "solely the property and rights of the State", that these amounts are "restricted to the provision of benefits under the plan", and that it may be that these amounts are not "subject * * * to the claims of the State's general creditors." In addition, La.R.S. 42:657 expressly permits members to obtain refunds of their contributions. Each of the foregoing elements causes the Judicial Plan to violate the requirements of section 457(b)(6), especially the final flush language of paragraph (6). This pronouncement is the analysis of Louisiana's highest court that has spoken to the matter (inasmuch as the parties' briefs and our research have not led us to any higher or more recent authority). We note that, in this instance the Louisiana Supreme Court, in denying the certiorari or writ of review, added the statement "The result is correct." 427 So. 2d 1206 (case 3, La. 1983). Since the only indication by the Louisiana Supreme Court is this favorable one, and (especially in light of La.R.S. 42:657) we cannot conclude the Louisiana law is other than as stated in the Court of Appeal's opinion (see *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967); *Estate of Sawyer v. Commissioner,* 73 T.C. 1, 3-5 (1979)), we conclude that (1) the Court of Appeal has correctly described Louisiana law, and (2) the Judicial Plan fails to meet the requirements of section 457(b)(6).

This conclusion is strengthened by, if not required by, the legislative history of section 457, which makes it plain that section 457 is not intended to apply to funded plans. See H. Rept. 95-1445, p. 53 (1978); S. Rept. 95-1263, p. 65 (1978); General Explanation of the Revenue Act of 1978, prepared by the Staff of the Joint Committee on Taxation, p. 68 (1979). By requiring that the employee contributions and the employer contributions be transferred monthly to a separate trust that is sufficiently separate from the State as to be itself exempt from taxation under section 501(a), Louisiana has created a funded plan.

We conclude that the Judicial Plan is not an eligible State deferred compensation plan and thus section 457(a) does not authorize petitioners to defer the recognition of income on account of Foil's employee contributions.

Petitioners contend that (1) the term "State" is defined by section 457(d)(1) to include "an agency or instrumentality of a State", (2) LASER & Co. is such an agency or instrumentality of Louisiana, (3) the deferred amounts were subject to the claims of the general creditors of LASER & Co., and therefore (4) the deferred amounts were "subject * * * to the claims of the State's general creditors", within the meaning of section 457(b)(6).

The difficulty with petitioners' appealing logic is that section 457(b)(1) requires that "only individuals who perform service for the State may be participants" in the plan which is being tested. The individuals who participate in the Judicial Plan perform services for the State of Louisiana, not for LASER & Co. There is no indication in the statute (and we have not found any indication in the legislative history) that the Congress meant that one entity could be the "State" for section 457(b)(1) purposes and—for the same plan—another entity could be the "State" for section 457(b)(6) purposes.[22] Accordingly, section 457(b)(6) must be tested by availability for claims of general creditors of

---

[22]See R. Dickerson, The Interpretation and Application of Statutes 224 (1975), as follows:

Because legal documents are for the most part nonemotive, it is presumed that the author's language has been used, not for its artistic or emotional effect, but for its ability to convey ideas. Accordingly, it is presumed that the author has not varied his terminology unless he has changed his meaning, and has not changed his meaning unless he has varied his terminology; that is, that he has committed neither "elegant variation" nor "utraquistic subterfuge." This is the rebuttable presumption of formal consistency. [Fn. refs. omitted.]

Louisiana, and not of LASER & Co. We have concluded that the deferred amounts are not available to the general creditors of Louisiana.

Petitioners point to the final flush language of section 457(b), the language that appears after the end of section 457(b)(6), as follows:

A plan which is administered in a manner which is inconsistent with the requirements of any of the preceding paragraphs shall be treated as not meeting the requirements of such paragraph as of the first plan year beginning more than 180 days after the date of notification by the Secretary of the inconsistency unless the State corrects the inconsistency before the first day of such plan year.

Petitioners contend that, since no such notice was ever given by respondent, petitioners are entitled to treat the Judicial Plan as complying with the requirements of section 457(b) for 1981.

We read the statute as drawing a distinction between what the plan provides and how the plan is administered. The defect in the instant case goes to what the plan provides. As we read the statute, if the plan instruments meet all the requirements of section 457(b), then the plan and its participants are secure in their benefits until respondent has notified the plan that the plan's administration is inconsistent with one or more of these requirements. However, in the instant case, the failure to comply exists because of the statutory assignment of the employee contributions and the employer contributions to LASER & Co. and the Title 42 Trust, not some impropriety in administration by LASER & Co.

Accordingly, the final flush language of section 457(b) affords no safe haven to petitioners in the instant case.

## 2. The Judicial Plan is Excluded From the Transitional Rules

Petitioners contend in the alternative that the transitional rules of section 131(c)(2) of R.A. 1978 permit the deferral they seek. Under section 131(c)(2)(A)(i), the transitional rule deferral is not available with respect to compensation deferred under a plan described in section 457(e)(2). Section 457(e)(2)(A) describes "a plan described in section 401(a)

which includes a trust exempt from tax under section 501(a)''.

Petitioners, for the first time on brief, argue, in the alternative, that neither the Judicial Plan nor the System's Plan were plans described in section 401(a) in 1978 (the year in which section 457 was enacted) or in 1981 (the year in issue). We have held on numerous occasions that we will not consider issues which have not been pleaded. *Markwardt v. Commissioner*, 64 T.C. 989, 997 (1975), and cases cited therein. Furthermore, the Title 42 Trust, which holds the Judicial Plan's contributions, has been stipulated to be exempt under section 501(a), and as respondent points out, petitioners have admitted that, in 1981, the Judicial Plan was, or formed part of, a plan which was qualified under section 401(a).

We believe that the interests of justice require that we hold petitioners to their pleadings and concessions. At the start of the trial in the instant case, on August 25, 1986, petitioners' counsel asked that her pretrial memorandum be filed as part of her opening statement. She then proceeded to outline petitioners' case, focusing on (1) various aspects of section 457 and the effective date rules relating to it, enacted by section 131 of R.A. 1978; (2) an addition to these effective date rules, enacted by section 252 of TEFRA; and (3) section 414(h), enacted by section 1015 of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 925. Neither in her oral remarks nor in the written pretrial memorandum did petitioners' counsel articulate the contention that neither the System's Plan nor the Judicial Plan were qualified under section 401(a) in 1978, or 1981, even though respondent unequivocally argued in his second amendment to answer and pretrial memorandum that petitioners' 1981 deferred contributions were made to a plan qualified under section 401(a). Had petitioners timely alerted respondent to their contention that the Judicial Plan was not a qualified 401(a) plan, in spite of their admission to the contrary[23] respondent may well have elected to

---

[23]In petitioners' response to respondent's request for admissions, filed July 16, 1986, petitioners responded as follows:

*3. ANSWER TO REQUEST FOR ADMISSIONS NO. 3:*

The "Judicial Plan" as defined in the "First Stipulation of Facts" for the above-captioned case was not a qualified plan pursuant to I.R.C. § 401(a) in 1981.

present evidence to show that the Judicial Plan did indeed meet the requirements of section 401(a) in both 1978 and 1981. Moreover, LASER & Co. or others may have elected to move the Court for permission to file amicus briefs.

We note that, if we were to agree with petitioners' contention that the Judicial Plan was not tax-qualified for 1981, then that might have rather unwelcome Federal income tax consequences for the Judicial Plan (as to its share of LASER & Co.'s earnings) and its participants (as to Louisiana's contributions).

Petitioners offer no explanation of substance to justify us from relieving them from their concessions; the Judicial Plan is excluded from the benefits of the transitional rules of section 131(c)(2) of R.A. 1978; these transition rules do not provide the deferral that petitioners claim.

### III. Section 414(h)—The Pick-Up Provisions

Petitioners maintain that, when Foil filled out a member registration form with LASER & Co., he agreed that his employer would automatically deduct from his check an 11-percent employee contribution and submit it to LASER & Co. Petitioners contend that once Foil made that decision, the contribution was mandatory and he did not have the ability to receive the contributions directly thereafter. Therefore, petitioners maintain, by automatically reducing Foil's take-home pay, forwarding that amount to LASER & Co., and commingling it with the employer's contribution to LASER & Co., the system established by Louisiana "picked-up" the employee contributions. Petitioners contend that this procedure has not changed from 1981 through 1987. Petitioners further maintain that Act 843, enacted by the Louisiana Legislature in 1982, adding La.R.S. 42:697.12, see *supra*, provided that for Federal tax purposes, employees' contributions to Louisiana retirement systems would be treated as employer contributions. Petitioners contend that once La.R.S. 42:697.12 went into effect, there was no change in the manner in which the Judiciary Department made deductions or transferred contributions to the State. Petitioners argue that substance should control over form

---

Petitioners deny the statement is true and also object to the relevance of such statement.

and, therefore, Foil's 1981 employee contributions should be treated as employer contributions under section 414(h) and not included currently in his gross income.

Respondent maintains that La.R.S. 42:697.12 merely provides that various State public retirement systems, including LASER & Co., are permitted to adopt pick-up rules. He contends that LASER & Co. did not adopt its resolution for "picking-up" employee contributions under section 414(h)(2) until August 10, 1983, to be effective January 1, 1984. Respondent argues that, since Louisiana did not by statute or other means manifest any intent to treat employee contributions as "picked-up" for any period before January 1, 1984, Foil's 1981 contributions are not excludable from his gross income for 1981 under section 414(h)(2).

We agree with respondent.

Section 414(h)[24] was enacted by section 1015 of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 925. In describing this provision, the House Ways and Means Committee Report to accompany H.R. 12855 (Private Pension Tax Reform)[25] stated as follows (H. Rept. 93-807, p. 145 (1974), 1974-3 C.B. (Supp.) 236, 380):

> *Designated contributions.*—Under present law, contributions which are designated as employee contributions are generally treated as employee contributions for purposes of the Federal tax law. For example, this is the case with respect to employee contributions under the Federal Civil

---

[24]SEC. 414. DEFINITIONS AND SPECIAL RULES.

\*    \*    \*    \*    \*    \*    \*

(h) TAX TREATMENT OF CERTAIN CONTRIBUTIONS.—

(1) IN GENERAL—Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed—

(A) to an employees' trust described in section 401(a), or

(B) under a plan described in section 403(a) or 405(a),shall not be treated as having been made by the employer if it is designated as an employee contribution.

(2) DESIGNATION BY UNITS OF GOVERNMENT.—For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

[The subsequent amendment of this provision by sec. 491(d)(26) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 850, does not affect the instant case.]

[25]The text of H.R. 12855 was adopted by the House of Representatives as title II of H.R. 2 on Feb. 28, 1974. This text, as to sec. 414(h), is identical to the text of H.R. 2 as enacted (except that the Conference Committee inserted the effective date language into the opening flush language of sec. 414(h)(1)), and so the House Ways and Means Committee Report to accompany H.R. 12855 is properly a part of the legislative history of the 1974 Act.

Service plan. Your committee's bill contains a provision to clarify this rule for the future. This provision provides that amounts that are contributed to a qualified plan are not to be treated as an employer contribution if they are designated as employee contributions.

*This provision gives effect to the source of the contributions, as designated in the plan.* For example, if the appropriate committees of the Congress were to report legislation regarding employee contributions under the Federal Civil Service plan so that the present employee's contributions would become employer contributions under the Federal Civil Service plan (and that legislation were to be enacted), then those contributions would constitute employer contributions to the plan, which would be excludable from the employee's income when made. The same rule would apply to State and local governmental plans which now designate contributions as employee contributions, if the appropriate governmental bodies change the provisions of their plans.

However, some State and local government plans designate certain amounts as being employee contributions even though statutes authorize or require the relevant governmental units or agencies to "pick up" some or all of what would otherwise be the employee's contribution. In other words, the governmental unit pays all or part of the employee's contribution but does not withhold this amount from the employee's salary. In this situation the portion of the contribution which is "picked up" by the government is, in substance, an employer contribution for purposes of Federal tax law, notwithstanding the fact that for certain purposes of State law the contribution may be designated as an employee contribution. Accordingly, the bill provides in the case of a government pick-up plan, that the portion of the contribution which is paid by the government, with no withholding from the employee's salary, will be treated as an employer contribution under the tax law.

[Emphasis added.]

The Conference statement of managers explained the conference agreement regarding this provision as follows (H. Rept. 93-1280 (Conf.), p. 279 (1974), 1974-3 C.B. 415, 440):

*Amounts designated as employee contributions*

To clarify present law, the substitute [i.e., the Conference Committee's substitute for the House bill and the Senate amendment] provides that amounts contributed to a qualified plan in taxable years beginning after December 31, 1973, are to be treated as employee contributions if they are designated as employee contributions under the plan. This rule does not apply, however, to government "pick-up" plans, where the contribution is paid by the government, with no withholding from the employee's salary, and these amounts would be treated as employer contributions, no matter how designated under the plan.

Thus, section 414(h)(1) provides that amounts contributed to a plan which meets the requirements of section 401(a) will not be treated as employer contributions if designated

under the plan as employee contributions. Under Louisiana law, the deferred amounts are designated as Foil's contributions, and are then withheld from Foil's income and paid over to LASER & Co. under the Judicial Plan. Thus, under section 414(h)(1), these amounts are employee contributions and are currently taxable to Foil.

Section 414(h)(2), however, provides an exception to this rule in the case of plans established by governmental units. Under section 414(h)(2), contributions which the governmental employer "picks up" are treated as employer contributions even though designated as employee contributions.

In the instant case, the question before the Court is whether the Judicial Plan "picked up" employee contributions, within the meaning of section 414(h)(2), before LASER & Co. specified that the employee contributions would be so "picked up."

The Congress did not explain, in the statute or in the Committee Reports, what factual elements we are to look to in order to determine whether the "employing unit picks up the [employee's] contributions".

In *Howell v. United States,* 775 F.2d 887 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit considered this issue. There the court held that contributions made prior to the employer's "pick-up" specification remained employee contributions for Federal tax purposes, stating as follows (775 F.2d at 890):

> The employee is stuck with the employer's designation, no matter what it is. Until 1981 Illinois by statute called the contributions to the Judges' Retirement System employees' contributions. This remitted Judge Howell to the presumptive rule that the whole salary is taxable. We could not accept his argument that the state "picked up" his contributions even before 1982—because he never saw the money either before or after the new law and never has had any choice about its destination—without either reversing one of the most venerable principle of taxation (that he who earns the money pays the full tax) or disregarding the rule that permits the employer to designate a contribution as made by it or by the employee. Illinois made one choice for years before 1982, and now (using the right to "pick up" contributions) it has made another. Judge Howell is bound by both.
>
> This exalts form over substance, no doubt. In tax, however, form and substance often coincide. The election between employers' and employees' contributions is nothing but form, and the new designation option in sec. 414(h)(2) simply continues the practice. A court must apply an empty

distinction with the same fidelity as it applies any other. Congress may choose, if it wishes, to allow employers to control the tax consequences of pension contributions, and the selection of one device is neither better nor worse than another.

We agree with the Court of Appeals' rationale and holding. For purposes of section 414(h)(2) the statute requires that the employer make a designation, whether by statute or otherwise, to effectuate a "pick-up" of employee contributions. La.R.S. 42:697.12 authorized the various retirement systems to establish "pick-up" arrangements. In itself, that provision was not sufficient to effectuate a "pick-up" of employee contributions. Some further action, in this case a designation by the Board, was needed. LASER & Co. did not make this designation until August 10, 1983, to be effective January 1, 1984. Before that date, Foil's employer, through LASER & Co., in effect, made the choice to treat the employees' contributions as "employee contributions". Foil is bound by that election. We hold that Foil's 1981 employee contributions may not be excluded from his gross income for that year pursuant to section 414(h).

Foil's 1981 employee contributions are not excludable under any of the theories advanced by him. Consequently, we hold that respondent properly included Foil's 1981 employee contributions in his gross income for 1981.

We hold for respondent.

*Decision will be entered for the respondent.*