T.C. Memo. 2019-2

UNITED STATES TAX COURT

ESTATE OF ARTHUR S. ANDERSEN, DECEASED, TENA HAROLDSON, ERIC STOVAL, AND HAROLD ALBRIGHT, PERSONAL CO-REPRESENTATIVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14067-14.                          Filed January 30, 2019.

Dennis D. Evenson, for petitioners.

John Schmittdiel and Beth A. Nunnink, for respondent.

MEMORANDUM OPINION

HOLMES, Judge: The late Arthur S. Andersen was a businessman who sold two Wyoming properties in 2010. The major issue in this case is about his bases in those properties; but his fight with the IRS sprawled across three schedules' worth of deductions and a penalty too.

**[\*2]**                                    Background

Andersen's background is somewhat mysterious.  A substantial part of this mystery stems from the fact that we never got to see Andersen or any other witnesses, because the parties agreed to submit the case to us on a stipulated record under Rule 122.[1]  That record shows that Andersen was an independent businessman who owned a number of properties in Wyoming and South Dakota.  Two Wyoming properties are important here because he sold them in 2010:  (1) a motel and RV park, which he bought in 2006, and (2) what seems to be vacant land that we'll call the ranch, which he bought in 2007.

Andersen didn't file his return for 2010 when it was due, and the Commissioner learned about the property sales from third-party filings.  Out popped a notice of deficiency (NOD) that set Andersen's capital gain on the sales equal to his proceeds.  Andersen filed a petition and then finally filed his 2010 return.  On it he unsurprisingly claimed that he had basis in each property that would offset a large chunk of the gain that the Commissioner asserted.  But Andersen also claimed a wide variety of deductions to reduce his taxable income, including a Schedule C, Profit or Loss From Business, that reported gross receipts

---

[1] Unless we say otherwise, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** of $655 against expenses of more than $500,000. The Commissioner sensed something might be amiss, poked around in the late-filed return, and disallowed a great many of the deductions that Andersen claimed.

Trial was delayed when Andersen's health grew worse and delayed again as new issues kept sprouting. After eighteen months, four status reports, and a disregarded order to produce documents, we entered a preclusion order to bring discovery to a close. We fixed a firm date for trial late in 2017. Andersen then died, and the parties submitted the case for decision on a stipulated record.

They settled many issues. And we are left to look at the gains Andersen reported on Form 4797, Sales of Business Property, from the sales of the motel and RV park, and of the ranch; deductions that he claimed on his Schedules C, E, and A; and a late-filing penalty under section 6651(a)(1).[2] The parties are farthest apart--about $1.1 million apart--in their calculations of the two bases in dispute. But their disputes about Andersen's substantiation of his expenses are far greater in number, if much smaller in amount. We summarize them here. From his Schedule C:

---

[2] We discuss this penalty only to record that the parties stipulated that Andersen filed his 2010 return more than three years after it was due. He did not address the penalty in his briefs and so has abandoned any right to argue that his failure to timely file was due to reasonable cause. See Mendes v. Commissioner, 121 T.C. 308, 312-13 (2003).

| [*4] | Claimed on return | Allowed in stipulation |
|---|---|---|
| Advertising | $4,185 | -0- |
| Car and truck | 61,401 | -0- |
| Contract labor | 79,150 | -0- |
| Depreciation | 89,174 | $36,177 |
| Insurance | 7,708 | 3,821 |
| Interest: | | |
| Mortgage | 7,290 | -0- |
| Other | 38,731 | 13,129 |
| Legal and professional services | 8,752 | -0- |
| Office expense | 12,921 | -0- |
| Rent or lease: | | |
| Vehicles, machinery, and equipment | 61,000 | -0- |
| Other business property | 24,000 | -0- |
| Repairs and maintenance | 9,363 | -0- |
| Supplies | 22,726 | -0- |
| Taxes and licenses | 15,354 | 3,503 |
| Travel | 4,715 | -0- |
| Utilities | 43,804 | 7,500 |
| Wages | 7,115 | -0- |
| Other expenses/motel expenses | 28,961 | -0- |

| [*5] Total | 526,350 | 64,130 |
|---|---|---|

His Schedule E:

| | Claimed on return | Allowed in stipulation |
|---|---|---|
| Auto and travel | $5,100 | -0- |
| Insurance | 16,400 | $3,821 |
| Legal and other professional fees | 32,525 | -0- |
| Other interest | 44,900 | -0- |
| Repairs | 50,398 | -0- |
| Taxes | 4,200 | 4,200 |
| Other: | | |
|     Custom hire | 18,700 | -0- |
|     Rent, vehicles, and machinery | 21,557 | -0- |
|     Rent land | 76,255 | -0- |
|     Crop insurance premium | 6,992 | 6,992 |
|     Farm expenses | 70,773 | -0- |
|     Office expenses | 12,921 | -0- |
|     Other | 3,000 | -0- |
| Total | 363,721 | 15,013 |

And finally, his Schedule A:

| [*6] | Claimed in P's opening brief | Allowed in stipulation |
|---|---|---|
| Installment for improvements | $33,129 | -0- |
| Mortgage interest | 13,783 | -0- |
| Mortgage interest | 30,055 | -0- |
| Mortgage interest | 5,905 | -0- |
| Total | 82,872 | -0- |

## Discussion

### I.  Income

The dispute about income is a dispute about the capital gains that Andersen received when he sold his properties.  The basics, in brief:  Section 61(a)(3) includes in gross income gain derived from the sale of real property.  This gain equals the excess of the amount realized from the sale over the property's adjusted basis.  Sec. 1001(a).  A property's adjusted basis is its initial cost adjusted under section 1016.  See secs. 1012, 1011.  Section 1016 lists a number of adjustments, and it is these that the parties dispute for both properties that Andersen sold in 2010.

**[*7]**  The Code's provisions for adjusted basis let us know that the Commissioner

got it wrong when he figured Andersen's tax bill by setting his capital gain[3] equal

to the sale proceeds--most property owners have *some* basis in what they sell.

A.    Motel and RV Park

We'll look first at the sale of the motel and RV park.  Back in 2006

Andersen agreed to buy approximately 51 acres of land in Fremont County,

Wyoming for $1.7 million.  The deal closed in 2007, and Andersen became owner

of the land, fencing, RV park facilities, motel rooms, cabins, and a house.  He sold

part of it--a little more than 35 acres--in 2010.  The sale included the part of the

property with the fencing, motel, and RV park buildings.  The parties agree on the

bases of the land and fencing--it's only the bases of the various buildings on the

land that they still fight over.  And it would seem that each party is a house--or

maybe an RV--divided against itself, with both Andersen and the Commissioner

shifting their positions on what the right basis is:

---

[3] While the Commissioner ended up with a net capital gain, we also note that he got the initial character of the gain wrong, stating in the NOD that Andersen's sale of properties resulted in short-term capital gain.  Because Andersen held both properties for more than one year, any gain resulting from their sale is long-term capital gain.  See sec. 1222(3).

| [*8] | Per Form 4797 | Per exam | Per P opening brief | Per R brief | Per P reply brief |
|---|---|---|---|---|---|
| Cost | $2,042,440 | $1,680,688 | $1,800,960 | $1,445,000 | $1,800,960 |
| Depr. | 140,054 | 346,580 | 140,054 | --- | 148,205 |
| Adj. basis | 1,902,386 | 1,334,108 | 1,660,906 | --- | 1,652,755[4] |

Andersen's final computation of his adjusted basis had four parts:

$1,680,688 (original cost, allocated for the portion of the property sold)

+  106,210 (improvements, consisting of labor and restaurant expenses)

+   14,062 (selling expenses)

-  148,205 (depreciation)

1,652,755

Andersen began with the $1,680,688 cost basis determined by the

Commissioner in the notice of deficiency.  He then added $106,210 in

"improvements," consisting of $75,264 in contract-labor expenses and $30,946 in

"restaurant building" expenses; and $14,062 in selling expenses, resulting in a

total cost basis of $1,800,960.  He then claimed $148,205 in depreciation for the

2006 through 2009 tax years.  To calculate this depreciation, Andersen applied the

---

[4] Andersen asserts in his reply brief that he had $1,800,960 in adjusted basis for the motel and RV park.  This number doesn't reflect the $148,205 he claims in depreciation.  We assume this was a mistake and reduce his adjusted basis accordingly.

**[\*9]** straight-line method for a nonresidential building with an associated 39-year useful life. After reducing cost basis by depreciation, Andersen arrived at an adjusted basis of $1,652,755.

Let's look at these numbers. First, there is Andersen's $75,264 in contract-labor expenses. The record does not show where Andersen came up with this number or why it should be added to basis and not just claimed as a deduction on Schedule C. Andersen in fact claimed a similar amount for contract labor as a deductible trade or business expense on Schedule C of his filed return; it wasn't until his opening brief that he argued it should be added to basis. If, for example, Andersen provided evidence that he paid the labor expense to replace the damaged roof of a motel or RV park building, we would permit him to capitalize his expenses under section 263(a)(1) as a permanent improvement or betterment. See, e.g., Stark v. Commissioner, T.C. Memo. 1999-1, 1999 WL 30943, at \*13. However, he provided no such evidence, leading us to consider this cost of contract labor a Schedule C expense.

Andersen next claimed $30,946 in "restaurant building" expenses as an addition to basis. His only substantiation for this was a handwritten ledger. While we discuss substantiation in more detail below, we note here that this ledger is an assertion, and an assertion isn't proof. It is wholly inadequate to establish that he

[*10] paid the amounts he claimed as either deductible expenses or as additions to basis. We deny Andersen's inclusion of these expenses in basis.

Andersen also added $14,062 in selling expenses to basis. While there is sufficient evidence in the record to substantiate these expenses, we believe they more appropriately reduce the amount realized than increase the cost basis, though it wouldn't alter the computation of gain. See Kurata v. Commissioner, T.C. Memo. 1997-252, 1997 WL 294558, at *3 n.2.

Andersen next reduced basis by $148,205 in depreciation. Under Andersen's 39-year straight-line method, depreciation should equal $184,714 (= $1,800,960 cost basis / 39-year useful life x 4 years in service), not $148,205. To figure out where Andersen's calculation went awry, we reverse engineered the amount of depreciation that he claimed: $148,205 depreciation / 4 years in service x 39-year useful life = $1,445,000 in cost basis. This, it seems, is the same cost basis that the Commissioner asserts in his brief.

Perhaps this is a subtle concession by Andersen, but it has no effect on our conclusion because we disagree with his choice of depreciation method. He cited section 1016(a)(2), which tells property owners to use the straight-line method "[w]here no method has been adopted." He argued that because the Commissioner did not specify the method he used in the exam to calculate depreciation, we must

[*11] use the default straight-line method. We disagree. If Andersen claimed any depreciation for the years before he sold the motel and RV park, he undoubtedly adopted *some* depreciation method. But he failed to produce any filed returns other than his 2010 return, meaning we have no way to determine what method he used. A taxpayer bears the burden of substantiating his basis, and Andersen failed to bear his. We therefore accept the Commissioner's position in the notice of deficiency as correct. See Doll v. Commissioner, T.C. Memo. 2005-269, 2005 WL 3108169, at *4; Knauss v. Commissioner, T.C. Memo. 2005-6, 2005 WL 90985, at *11.

Adopting the Commissioner's cost basis and depreciation leads to a finding that Andersen's adjusted basis in the motel and RV park is $1,334,108.

B.    Ranch Sale

|  | Per Form 4797 | Per exam | Per P opening brief | Per R brief | Per P reply brief |
|---|---|---|---|---|---|
| Cost | $852,534 | $378,540 | $740,000 | $300,000 | $740,000 |
| Depr. | -0- | 52,554 | --- | --- | 52,554 |
| Adj. basis | 852,534 | 325,986 | 740,000 | --- | 687,446 |

In 2007 Andersen bought the ranch from Nancy Johnson, and in 2010 he sold it to Roger and Sadie Leseberg. Andersen financed the purchase with a $300,000 mortgage to Johnson. The parties agree that this is properly included in

**[\*12]** basis because it was part of the price that Andersen paid for the property. Andersen, however, claimed that we should also include in basis a second mortgage of $440,000 issued by the Farm Credit Services of America, FLCA (FCSA) in 2008.

We disagree. Although the FCSA mortgage was secured by the same property as the Johnson mortgage, there is nothing in the record to suggest that the FCSA mortgage was part of the purchase price of the land--there is, for example, no indication of a staggered payment schedule in the documentation at the time of sale in 2007. Just mortgaging property one already owns doesn't increase one's basis. See sec. 1012 (basis equals the cost to *acquire* property); see also Astone v. Commissioner, T.C. Memo. 1983-747, 47 T.C.M. (CCH) 632, 656 n.24 (1983) ("Clearly, the giving of a mortgage on a piece of property during the period of ownership does not, in itself, increase the basis of the property"). The FCSA mortgage did not increase Andersen's basis in the ranch.

This leaves the ranch's basis at $300,000. But this turns out to be less than the adjusted basis that the Commissioner already allowed in his NOD. We'll take that higher figure as a concession, which gives us an adjusted basis for the ranch of $325,986.

**[*13]** II.    <u>Expenses</u>

The parties also dispute deductions that Andersen took on his Schedules C, E, and A.

A.    <u>Schedule C Deductions</u>

Section 162 allows a deduction for ordinary and necessary business expenses, but taxpayers have the burden of proof. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>see</u> sec. 1.6001–1(a), Income Tax Regs. That a taxpayer claims deductions on his return is not itself substantiation. <u>See, e.g.</u>, <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979). When a taxpayer fails to substantiate his deductions with precision, we may estimate certain kinds of expenses but only if he provides at least some evidence to support an estimate *and* we are convinced he incurred them in connection with his trade or business. <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957); <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-44 (2d Cir. 1930); <u>Finney v. Commissioner</u>, T.C. Memo. 1968-283, 27 T.C.M. (CCH) 1510, 1516 (1968).

Certain deductions have enhanced substantiation requirements under sections 274 and 280F. These categories include travel, meals and entertainment, gifts, and certain forms of "listed property." To deduct expenses that fall into these categories, a taxpayer must "substantiate[] by adequate records or by

**[\*14]** sufficient evidence" the amount, time and place, and business purpose of the expenditure. Sec. 274(d). Section 274's requirements deprive us of any power to estimate under <u>Cohan</u>, 39 F.2d at 544. <u>See</u> sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Andersen deducted a wide range of business expenses on his Schedule C and claimed he incurred them in the ordinary course of running the motel and RV park. We divide these claimed expenses into two categories--those governed by section 274 and those that are not--and look at each.[5]

1.     <u>Section 274 Expenses</u>

a.     <u>Car & Truck</u>

| Claimed on return | R concession in stip. facts | P claimed in opening brief | R concession in brief | P claimed in reply brief |
|---|---|---|---|---|
| $61,401 | -0- | $30,889 | -0- | $30,889[6] |

[5] The briefs show that the parties agree that Andersen is entitled to deduct expenses for (1) insurance of $3,821; (2) depreciation of $36,177; (3) interest of $13,129; and (4) taxes and licenses of $3,503.

[6] Andersen claimed $30,889 in car-and-truck expenses in his opening brief. However, in the "recommended findings of fact" section of his reply brief, he made no claim for car-and-truck expenses but significantly increased his claim for advertising expenses--from $4,130 to $30,889. We are convinced that this was only poor proofreading, because it matches his initial claim for car-and-truck expenses. Andersen also conceded all advertising expenses in his reply brief. So we'll treat this reference to "Advertising" as if it read "Car and truck."

**[*15]** Section 280F(d)(4)(A)(I) makes cars and trucks "listed property," so Andersen had to meet the strict substantiation requirements of section 274(d). This requires proof of the amount of each such expense (e.g., maintenance and repairs), a measure of its use in his business (typically mileage), the total use of the listed property for the tax period, the date of that use, and his business purpose in that use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

What we got instead was a spreadsheet on which Andersen listed all his reported expenses. Of the eleven that he claims under "Car and truck," seven have no support in the record beyond Andersen's handwritten ledger--no invoices, no checks, no notes or records. We have no idea if Andersen even kept this ledger during 2010 or created it as a summary of argument for this case. But even if we assume it was contemporaneous, it is devoid of the detail needed for substantiation of the specific facts that section 274 requires. As a result, we find that Andersen failed to meet the substantiation requirements under section 274 for these amounts.

Of Andersen's remaining four car-and-truck expenses, he produced a combination of checks and bank statements to show that he had paid them. For example, his claim of a $9,144 car-and-truck expense is supported by a check paid

**[*16]** to Brazos Helicopters, LLC.  But section 274 requires more than proof of payment.  We have no testimony, receipts, invoices, or other evidence to link this or any of the other claimed expenses to his motel and RV park business.  Section 274 requires proof of a business purpose, so we deny Andersen any deductions for these expenses too.

### b.  Travel

| Claimed on return | R concession in stip. facts | P claimed in opening brief | R concession in brief | P claimed in reply brief |
|---|---|---|---|---|
| $4,715 | -0- | $5,621 | -0- | --- |

Andersen conceded that he is not entitled to deduct any of his claimed travel expenses.  This makes it easy, and we deny these deductions too.

[*17]        2.        Other Expenses

| | Claimed on return | R concession in stip. facts | P claimed in opening brief | R concession in brief | P claimed in reply brief |
|---|---|---|---|---|---|
| Advertising | $4,185 | -0- | $4,130 | -0- | -0-[7] |
| Supplies & repairs | 32,089 | -0- | 42,454 | $28,612 | $42,454 |
| Legal & professional | 8,752 | -0- | 17,764 | -0- | 17,764 |
| Office expenses | 12,921 | -0- | 10,410 | 380 | 10,410 |
| Contract labor | 79,150 | -0- | 76,264 | 3,250 | 76,264 |
| Wages | 7,115 | -0- | 7,115 | 6,103 | 7,115 |
| Other (motel) expenses | 28,961 | -0- | 14,963 | -0- | 14,963 |
| Utilities | 43,804 | 7,500 | 17,655 | 7,500 | 17,655[8] |

Andersen's claims of deductions for even those expenses not subject to

section 274 are also defective. For example, while he explicitly accepted the

Commissioner's position that he is not entitled to deduct *any* of his claimed

---

[7] See supra note 6.

[8] We are again forced to make sense of Andersen's position. In his reply brief, Andersen claimed $40,891 in utilities expenses. However, this amount includes $9,973 in various nondeductible house expenses and $13,263 in "VI Pro," which Andersen admitted is nondeductible. Removing these nondeductible expenses from the amount claimed leaves $17,655, the amount claimed by Andersen in his opening brief.

[*18] advertising expenses, he also claimed in the same sentence that these expenses are consistent with the ordinary expenses for the motel industry. The same is true of his claimed deduction for unspecified "wages". If this is a suggestion that he wants us to estimate these expenses under Cohan, we won't, because all he has in support is that handwritten ledger. Nothing in the stipulated record would give us anything to use to estimate such expenses, and we will not just guess. See Adams v. Commissioner, T.C. Memo. 2013-92, at *14-*15.

For expenses in the remaining categories he sometimes had additional support in the form of bank statements. While these statements show that he paid those amounts to someone for something, there is insufficient evidence that these expenses were for his business. Many are in Andersen's wife's name, include both personal and possible business expenses, and fail to even identify the payee. This is not enough for us to make even an educated guess under Cohan. We deny all of them other than those that the Commissioner has already conceded.

The contract-labor category is a little bit different. Remember that Andersen claimed we should add these expenses to his basis in the motel and RV park. We already explained why we won't do that, but we'll give him the benefit of assuming that as an alternative he wants to claim these on his Schedule C, as he did on his return. He claimed $76,264 in such expenses. The Commissioner

[*19] concedes 2 of the 26 contract-labor expenses for a total of $3,250. Of the 24 remaining contract-labor expenses, 22 are supported by the ledger alone. These fail. Andersen tried to substantiate the final two with checks. These at least show the amounts that he paid, but we again lack anything that would link those payments to his trade or business.

B.     Schedule E Deductions

Andersen also claimed significant Schedule E deductions. On his return these were quite large--$363,721--but they shrank in his brief and now he claims only $47,490. The Commissioner conceded $15,013. Andersen's only support for the remaining expenses was a spreadsheet where he listed them as "Farm Expenses and Rent." Some checks and bank statements show some of these expenses were paid, but nothing shows to whom or for what.

Nothing more here than what the Commissioner conceded.

C.     Schedule A Deductions

That leaves a few personal deductions. Andersen claimed in his opening brief that he is entitled to $82,872 in installment improvements and interest deductions. As the Commissioner correctly notes, however, Andersen neither elected to itemize his deductions on his filed return, nor raised this issue at any point before filing his brief. What's more confusing, Andersen's reply brief made

**[*20]** no mention of Schedule A deductions. As a result, we are unsure whether Andersen continues to defend his entitlement to these deductions.

In any event, we generally don't consider issues raised by either the taxpayer or the Commissioner for the first time on brief. <u>Foil v. Commissioner</u>, 92 T.C. 376, 418 (1989), <u>aff'd</u>, 920 F.2d 1196 (5th Cir. 1990); <u>Markwardt v. Commissioner</u>, 64 T.C. 989, 997 (1975). Even if we did, we see nothing in the record that shows that any part of this amount is deductible under section 163(h) as interest on home-mortgage or home-equity debt. We deny these deductions too.

<u>Decision will be entered under</u>

<u>Rule 155</u>.